City of Utica *v.* Churchill.

———————————◆———————————

## THE CITY OF UTICA *vs.* CHURCHILL and others.

National banks created by the acts of congress of February 25, 1863, and June 4, 1864, are lawfully created, and are to be deemed and taken to be agencies created for the purpose of carrying on the operations of the federal government.

A tax on a stockholder, for the stock held by him in one of these banks, is a legitimate and proper subject of state or municipal taxation, and the stockholder is liable to be so taxed, under the laws of the state.

A tax upon a stockholder, for the stock held by him in a national bank, is . not a tax on the bank, nor on its property, but is upon property held and owned by the stockholder, only, and in which the bank has no manner of interest.

The laws of the state, and not the laws of congress, are to furnish the guide by which to ascertain whether the stock of the national banks can be taxed, and the place and manner of taxing them.

The stock of the national banks is personal property, and is therefore taxable under the first section of the New York tax law, which declares that all land, and all *personal estate* within the state, whether owned by individ- ..uals or by corporations, shall be liable to taxation, &c.

City of Utica *v.* Churchill.

Inasmuch as national banks can not be taxed on their capital, the stock-holders are subject to taxation, on their stock, under the 14th section of the New York tax law.

But stockholders can not be lawfully assessed, in the ward or town in which the bank is located, when their residences are in other towns or wards, or in other states.

THE defendants are the stockholders in the Second National Bank of Utica, a corporation duly organized under the act of congress, approved 25th February, 1863, entitled, "An act to provide a national currency, secured by a pledge of United States stocks, and to provide for the circulation and redemption thereof." The bank is located and doing business in the first ward of said city. The defendant Churchill resides in said ward ; Brayton in the third ward ; Woolcott in the town of Whitestown, in said county of Oneida ; Foote in Hamilton, Madison county ; and Miller in the city of Washington, in the District of Columbia.

The city of Utica is divided into seven wards, each of which elects an assessor, and these assessors prepare the assessment rolls, for their several wards, upon the valuation in which the city taxes are levied and collected. The several defendants above named were assessed in the said first ward, for the amount of stock held by them severally in said bank, and warrants have been issued for the collection of the city tax so assessed. In making up the assessment roll of said first ward, the defendant Churchill was assessed for property owned by him, other than said stock, and his name was entered in alphabetical order on the roll. But he and the other stockholders in said bank were assessed separately for the said stock, and their names were entered at the end of said roll, so that as to Churchill, there were two assessments against him on said roll.

The right to impose this tax was rested, by counsel, upon a proviso in the 41st section of the act of congress, approved June 4, 1864, being chapter 106 of the laws of that year, which is in the following words, viz : "Provided that nothing

in this act shall be construed to prevent all the shares in any of the said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation in the assessment of taxes, imposed by, or under state authority, at the place where such bank is located and not elsewhere, but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state. Provided further, that the tax so imposed under the laws of any state, upon the shares of any of the associations authorized by this act, shall not exceed the rates imposed upon the shares of any of the banks organized under the authority of the state, where such association is located. Provided also, that nothing in this act shall exempt the real estate of associations, from either state, county or municipal taxes, to the same extent, according to its value, as other real estate is taxed."

The capital of the bank is invested in stocks of the United States. The defendants having refused to pay said tax, the city and the defendants agreed upon the facts, hereinbefore stated, and submitted the question of the liability to pay the tax so assessed against the defendants, to the court, pursuant to § 372 of the code of procedure.

*N. Curtis White*, for the plaintiff.

*Miller*, for the defendant.

MULLIN, J. The operations of government can not be carried on without the expenditure of money, and that expenditure must be supplied by taxes, collected from its citizens. The power to tax is therefore necessarily inherent in government, and indispensable to its existence. From the very nature of the case, such a power is supreme. If it is limited, it must be by the constitution that brought it into being, or by force of conditions, imposed by some other and superior authority.

City of Utica *v.* Churchill.

The people of this state, acting through a convention, lawfully assembled, gave their assent to the creation of the federal government, whose constitution conferred upon it certain powers and duties, for the common welfare, which necessarily limited the power of the states, as well to impose taxes, as to exercise other rights of sovereignty, inconsistent with the rights conferred on the national government. Some of these restrictions upon the power of the states, to impose taxes, are expressly declared in the constitution of the United States; others are implied from it. By subdivision 2 of § 10, article 1st, it is declared that "no state shall, without the consent of congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws.  *  *  *  No state shall, without the consent of congress, lay any duty of tonnage."

The implied prohibitions are against imposing taxes on the real or personal property of the United States, or upon any agent, or instrument, employed by it in the exercise of its constitutional powers, or on any evidence of indebtedness which it may issue for money borrowed by it.

It is not declared in the constitution of the United States, that the states may not tax the custom houses, post offices, arsenals, or other property owned by the federal government. But as the states, if not restricted, might impose on such property such oppressive taxes as to compel the government to abandon it, and thus successfully drive out the post masters, custom house officers, and other officials of the government, and thereby effectually withdraw the state from its allegiance to such government, it became necessary to withhold from the states the power to accomplish such a treasonable purpose. If a state may tax the evidences of indebtedness issued by the United States, in payment of loans, *ad libitum*, such securities must necessarily be depreciated to the extent of the tax, and in this way the ability of the government to borrow money would be effectually destroyed.

These considerations led the supreme court of the United States to declare the law to be that the states could not impose taxes upon the property of the United States, or upon any of the agents or instruments employed by it. A brief review of the cases will best illustrate the principles above mentioned, and the extent to which the court has gone in applying them.

In *Dobbins* v. *The Commissioners of Erie County,* (16 *Peters,* 435,) the defendants had assessed the plaintiff for his salary as captain of the United States revenue cutter stationed in the Erie revenue district. The tax was paid, and the plaintiff sued to recover it back on the ground that a state could not tax the office, and thereby lessen the compensation paid by the government for the officer's services. The reasoning of the court was, that the state could not tax a custom house revenue cutter, or other instrument employed in collecting the revenue, and as the collector of the customs and captain of the revenue cutter were but agents used for the same general purpose, and as the officer could not be employed without compensation, it followed that if the state could tax his office or salary, it could absorb it altogether, and thus deprive the government of an officer in that or any other department.

In *McCulloch* v. *The State of Maryland,* (4 *Wheat.* 316,) the state of Maryland by an act of its legislature, imposed a tax on all banks or branches thereof in said state, not chartered by such legislature. The Bank of the United States had been previously incorporated by congress, and established one of its branches in Baltimore. The act provided that the bills issued by every such bank should be stamped, and for such stamps certain rates enumerated in the act were required to be paid to the treasurer of the state. The bank was permitted to commute by paying a sum in gross each year, but in default of doing the one thing or the other, a penalty was imposed on the bank. The suit was brought for the penalty, and the plaintiff recovered, and from that judg-

City of Utica *v.* Churchill.

ment an appeal was taken to the supreme court of the United States. Chief Justice Marshall delivered the opinion of the court in favor of reversing the judgment. The opinion is one of the ablest ever delivered by that learned and able judge. After an elaborate examination of the question whether congress had power to create a corporation and clothe it with banking powers, he proceeded next to an examination of the power of the state to impose upon the bank the tax, for the non-payment of which the action was brought, and he lays down the following rule by which to determine whether the subject of taxation is within the reach of the state laws, or is excluded from them: "All subjects over which the sovereign power of the state extends, are objects of taxation, but those over which it does not extend, are, upon the soundest principles, exempt from taxation. The sovereignty of a state extends to every thing which exists by its own authority or is introduced by its own permission, but does it extend to those means which are employed by congress to carry into execution powers conferred on that body by the people of the United States? We think it demonstrable that it does not. Those powers are not given by the people of a single state; they are given by the people of the United States to a government whose laws, made in pursuance of the constitution, are declared to be supreme; consequently the people of a single state can not confer a sovereignty which will extend over them."

In *Weston & Co.* v. *The City Council of Charleston*, (2 *Peters*, 449,) the city levied a tax on stocks issued for loans made to the United States, and the constitutional court of South Carolina, being the highest court of law in the state, held the tax to be legal, and the case was carried to the supreme court of the United States. The judgment of the constitutional court was reversed, and the ordinance of the city council taxing the stocks of the United States declared unconstitutional. Chief Justice Marshall again delivered the opinion of the court, and he states the conclusion arrived

at by the court in the following words, viz : "The tax on government stock is thought by the court to be a tax on the contract—a tax on the power to loan money on the credit of the United States, and consequently to be repugnant to the constitution."

The principle of the case last cited was reaffirmed in the case of *The People,* ex rel. *The Bank of Commerce,* v. *The Commissioners of Taxes and Assessments for the city and county of New York,* (2 *Black,* 620.) In that case the defendants had assessed the relator for the whole of its capital, notwithstanding a part of it was invested in stocks of the United States. The judgment of the court of appeals of this state, holding the assessment valid, was reversed. The assessment was held to be unconstitutional and void.

The same conclusion was arrived at in the more recent case of *The Bank of the Commonwealth* v. *The Commissioners of Taxes &c. of the city of New York,* not yet reported. In that case the defendants had assessed the bank for the whole of its capital, notwithstanding it was shown to them that the whole capital was invested in stocks of the United States. This assessment was sought to be sustained under an act of the legislature of this state, passed in April, 1863, and after the decision of the case of *The Bank of Commerce,* cited *supra,* and which declared that all banks, &c. should be liable to taxation on a valuation equal to the amount of their capital stock paid in or secured to be paid in, &c., the supreme court sitting in the first district, and the court of appeals, held the assessment valid. But the supreme court of the United States reversed the judgment, holding that a tax on a valuation equal to the amount of the capital, was a tax on the property of the corporation, and as the property of the bank consisted of stocks of the United States, the assessment was illegal.

In *Osborn* v. *The President &c. of the Bank of the United States,* (9 *Wheat.* 738,) the legislature of the state of Ohio had passed a law taxing all banks and individuals and com-

City of Utica *v.* Churchill.

panies, transacting business in that state without being allowed to do so by the laws thereof, and it imposed upon the Bank of the United States, if it should continue to do business in said state after a day named therein, a tax of $50,000 for each office of discount and deposit. The auditor of the state proceeded to enforce said tax by seizure and sale of the property of the bank. A bill was filed in the circuit court of the United States for Ohio, to restrain the auditor of the state and those acting under him, from collecting said tax, on the ground that the state could not enforce a tax on the bank. The circuit court gave judgment in behalf of the plaintiff, requiring the defendants to restore to the bank the money and property taken. An appeal was then taken to the supreme court of the United States, and the judgment of the circuit court affirmed; the court holding the case to be within the principle of *McCulloch* v. *The State of Maryland*, (4 *Wheat.* 316;) that it was a tax upon the bank, an agent created by congress for the purpose of carrying on the fiscal operations of the government, and was, therefore, as clearly beyond the power of state taxation, as was a custom house, or post office, owned and occupied by the United States.

There are other cases varying from those cited in these facts, but all involving the same principle; and indeed the cases cited, while they show in how many ways the states have attempted to subject to taxation the property of the general government, or the agents employed by it in the execution of its powers, do also show that these attempts have in every instance been met by the judiciary and defeated by the application of the principle that the federal government, in the exercise of the powers conferred upon it by the constitution, is supreme, and that no state has the power, under the constitution, to interfere with it in any manner, or with the agents or instruments employed in carrying its powers into operation. That a tax upon its property, or upon its evidences of debt given by it upon the loan of money, is

an unlawful interference with, or restriction upon, the constitutional functions of the government, and is, therefore, unconstitutional and void.

In the course of the preceding remarks, it has appeared that the supreme court of the United States has held the act creating the Bank of the United States to be a constitutional exercise of the legislative powers vested in congress, and it was so held on the ground that although no express power is given by the constitution to congress, to create a corporation for banking or other purposes, yet in addition to the enumerated powers granted it, it was clothed with such other powers as were necessary to carry into operation such express powers, and that, therefore, congress was at liberty to determine for itself what means or agencies it would employ to give effect to the enumerated powers; that it was, therefore, competent for congress to create a corporation and clothe it with banking powers, if in its judgment such an institution was a proper agency or instrument to effect the object intended. It was also decided that it was competent for congress to authorize the bank to create and locate branches, in its discretion, and that such branches were as effectually protected from taxation by the states as was the bank itself. (*See McCulloch* v. *The State of Maryland*, 4 *Wheat*. 316, *and Weston* v. *The City Council of Charleston*, 2 *Peters*, 449.)

If it was within the constitutional power of congress to create one corporation and clothe it with banking powers, it would seem to follow that it might create one hundred, or one thousand, if in its judgment such number was necessary in order to the due execution of the powers conferred by the constitution on any of the departments of the government. When any body, tribunal or officer is clothed with a discretion as to the means which may be used to attain a given end, that discretion is not reviewable; when exercised, it is to be taken as a lawful and legitimate means to attain such end. However much the courts might differ from congress

as to the wisdom or propriety of creating banks to aid in carrying on the operations of government, yet the courts are not authorized to review the action of congress in that behalf, and therefore banks, when created by congress, must be held to be constitutional agents, and entitled to all the immunities and privileges belonging to such agents.

If these views are correct, it follows that the national banks created by the acts of congress of the 25th February, 1863, and of June 4th, 1864, are lawfully created, and are to be deemed and taken to be agencies created for the purpose of carrying on the operations of the federal government.

The cases to which I have referred, decided three propositions affecting these national banks:

1st. That they can not be taxed by the states.

2d. That stocks of the United States held by them, and forming a part or the whole of their capital, are not the subject of state taxation, when the tax is imposed on their capital at its market value.

3d. That the stocks of the United States, when held by them otherwise than as capital, are not taxable by the states.

In the case before us, the tax is not on the bank or its capital, nor is it, *eo nomine,* on stocks of any kind; *but is upon the stockholder for the stock held by him in such bank.* The defendants' counsel insist that it is immaterial in what form the tax is levied; it is in fact upon the property of the bank, and that property consists of United States stocks, and these stocks are not subject to be taxed for any state or municipal purposes. If this proposition is correct, the conclusion drawn from it would be unquestionably sound. But I am quite clear that it is unsound, and that a tax on the stockholder for the stock held by him in one of these banks, is a legitimate and proper subject of state or municipal taxation.

When one of these institutions is created, a subscriber for its stock pays over his money and receives in return a certificate that he is a stockholder in said bank, and is entitled to

an interest in it equal to the number of shares for which he subscribes; that is to say, that he is entitled to a share of its earnings, and in case of dissolution, to a share of its property or its proceeds in the proportion that the number of shares held by him bears to the whole number of shares into which the capital was divided. In other words, a legal being has been created, to whom he has paid his money, and from whom he has received in payment therefor a certificate entitling him to a share of the property of such being, or body, in proportion to the amount paid. This legal entity is, after the payment of the money to it, the lawful owner of it, and can dispose of the same at its own pleasure. The subscriber has no longer a particle of legal interest in the money thus paid, and is not for any purpose to be deemed the owner of it. He is the owner of the shares of stock, and these shares are declared by the 12th section of the act of 1863 to be personal property. This personal property the subscriber has purchased with his money, and it is the representative of the money, or of so much thereof as the assets of the bank may be able to pay. This is the intrinsic value of the stock. The market value may be more or less, depending on the demand for it, which is to some extent regulated by the confidence the public may have in its management, and on the value of money.

In the stock held by its stockholders, the bank, the corporation itself, has no legal interest whatever. Burthens imposed on the stock do not affect the bank or its resources. If the stock is seized by the state, or other authority, for debts due from the stockholder, and confiscated, or otherwise disposed of, the bank is not injured, or its ability to do business impaired to the extent of a penny. A tax, therefore, on the stockholder, for the stock held by him in a national bank, is not a tax on the bank, nor on its property, but is upon property held and owned by the stockholder only, and in which the bank has no manner of interest. In thus holding, we but reaffirm the views of Chief Justice Marshall.

In *McCulloch* v. *The State of Maryland,* after assigning his reason for holding that the state could not impose a tax on the Bank of the United States, he says : "This opinion does not deprive the states of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank in common with the other real property within the state; *nor to a tax imposed on the interest which the citizens of Maryland may hold in the institution in common with other property of the same description throughout the state."*

In the case of *Bulow* v. *The City Council of Charleston,* (1 *Nott and McCord,* 527,) it was held that stock in the Bank of the United States in. the hands of individuals, may constitutionally be taxed by a state. (*See also the same point, State* v. *Collector,* 2 *Bailey,* 654.) I am not aware that it has been held in any of the states that stocks held by citizens in the Bank of the United States was not subject to taxation by the states; and if the stock of that bank was taxable, it follows that the stock of the national banks brought into being by the same powers, and for the same purposes, must also be taxable.

The defendant's counsel has argued with some earnestness that if the power to tax these banks, or the stocks of the United States held by them, or others, was withheld because the state might by that means destroy the banks, and impair the credit of the government, as a borrower of money, thus interfering with, if not abrogating the powers conferred by the constitution on the federal government, the same results are allowed by permitting the states to tax the holder of stock in these banks, for the stocks held by them ; that when the power to tax is conceded to be in a state, the amount which shall be collected rests wholly in its discretion. It may therefore impose on the stockholder such oppressive taxation as to compel the winding up of all this class of banks in the states.

It must be conceded that this injustice, this gross abuse of power, and disregard of the rights of the federal government, may be committed; but if the power and jurisdiction of the states are to be regulated by, or made to depend upon the liability of such rights and jurisdiction to be abused, or to be exercised to the prejudice of the United States, they would very soon be deprived of all power ; because there is scarcely a power vested in the states which may not in some way, and at some time be wielded against the general government. · In the exercise of the taxing power the state may take from the citizen all, or so much of his property as to disable him from. paying taxes assessed by the federal government; but who would venture to deny this power to the state because of the possibility that it might be abused ?   The powers of govern-. ment must be vested in some man or body of men, and it must be done notwithstanding the known and uniform tendency of those clothed with power to abuse it.   All arguments resting on this tendency to abuse power must be addressed to those who grant it, not to the judiciary, whose province it is to decide whether the powers conferred have been lawfully exercised.

It is true that in a case, of doubt as to whether the constitution or law confers power in a given case, it is right to take into consideration the mischiefs which may result from giving or withholding it.   But this is done only for the purpose of arriving at the intention of those who made the constitution or law ; as it is reasonable to presume that a power would not be granted which would be productive of great evils, nor withheld if it would be productive of great good,. if fairly within the purposes and objects for which the power was intended to be wielded.

If a state should, in disregard of its duty to its citizens, or the federal government, impose on banks created by that government, greater taxes than it imposes on those created by its own laws, with the intent of thereby driving out or embarrassing the general government, I can not doubt but

that the courts would correct the abuse. But whether the courts have such a power or not is not very important; it is enough to know that the mere liability to abuse the right to tax the stockholders of these national banks is no reason why the power to tax them should be denied or withheld.

I am therefore of the opinion that the stockholders in the Second National Bank of Utica are liable to be taxed for state or municipal purposes under the laws of the state.

I now come to the next and only remaining question of any importance in the case, and it is, whether these stockholders being taxable, they can be lawfully taxed in the first ward of the city of Utica where the bank is located, notwithstanding their residences may be in other towns or in other states. The proviso in the 41st section of the act of 1864, declared that the stockholders in these banks are taxable at the place where the bank is located, and not elsewhere. If the power to tax is derived from this clause of the statute, then the defendants are properly taxed; but if congress has no power over the subject of taxation by the state, then the liability must be determined by the state law, and not by the act of congress.

The power to tax is an attribute of sovereignty, and the constitution of the United States out of the way, is absolute in the states. The power is however limited by the constitution, so as to prevent the states from interfering with the lawful exercise by the federal government of the powers conferred on it by that instrument. The supreme court of the United States in the cases cited, puts its decisions that the states can not tax the agencies used by the general government in the exercise of its functions, solely on the ground that the exercise of such power is forbidden by the constitution. It can not require argument to demonstrate that when the constitution of the United States forbids the exercise of a power by the states, or exempts certain subjects from the operation of state law, congress can not grant to the state

any such power, or release the subject from the operation of the prohibition, unless expressly authorized so to do.

The constitution permits congress giving to the states its consent for them to levy imposts or duties on imports, or of tonnage, or to keep troops and ships of war in time of peace, or to enter into any agreement or compact with another state, or with a foreign power, or to engage in war; but beyond these congress has no authority to surrender any power conferred on any department of the government. If such a power existed, congress might utterly abolish the government of the United States. If it can yield one power, it can all. If the states can be released from the prohibition to exercise one power, they may be from all, and thus a dissolution of the Union be successfully accomplished without resort to ordinances of secession, and without the shedding of blood.

Sec. 8 of the 1st article of the constitution has seventeen subdivisions, each one of which contains a grant of one or more powers to congress, all of which are to be exercised exclusively by it, except the few cases already mentioned, in which the states may, by consent of congress, exercise the same. Among these powers exclusively vested in congress, are borrowing money on the credit of the United States, coining money, and declaring war, and raising armies and navies. The surrender of any of these powers to the states would inevitably destroy the government. The inability to borrow money, declare war, raise armies and navies, would leave it utterly helpless and at the mercy of its domestic and foreign enemies. A government without these powers would be as useless and as helpless as a human being without brains or muscles. Those who brought into being the federal government, never intended to give life to so useless a thing as government without power to support or defend itself. Yet this was precisely the result of their labors, if congress is at liberty to surrender the powers with which it was clothed to any or all of the states.

By the tenth section of the same article, the states are expressly forbidden to enter into any treaty, alliance or confederation, grant letters of marque and reprisal, coin money, emit bills of credit, make anything but gold and silver coin a legal tender in payment of debts, pass any bill of attainder or ex post facto law, or law impairing the obligations of contracts, or grant any title of nobility. That it was the intention to take away from the states these powers in every contingency, is manifest not only in the language of the section itself, but still more clearly by the subsequent clause which enumerates the powers the states may exersise by and with the consent of congress.

If then the tax in question was a tax on the bank or on the stocks of the United States, the authority given by the proviso to tax them would be of no validity. Congress possesses no power to confer on the states any such authority. But the tax is not on the bank or on the stocks held by it, but it is on the personal property purchased by the stockholders, and which is as I have shown, the subject of state taxation, and it is not and never was within the powers of congress to relieve such property from the obligation to pay its full share of the public burthen.

As the state does not acquire its right to tax the holder of the stock in question from or under the act of congress, that act can have no influence in regulating the place or manner of imposing the tax. It has no more control over the subject of the tax than if it had been passed by the parliament of Great Britain.

It is argued with some plausibility, that conceding congress may not have the power to confer on the states the right to tax the stockholders of these banks, yet it has the power to impose such conditions on the banks created by its authority as it deems proper, and as by the law creating these institutions it is made their duty to submit to state legislation, the same end, to wit, the payment of taxes, is attained, that would be attained if congress had the right to permit such

taxation. Admitting the proposition that congress can impose the payment of the state taxes as a continuance of the right to exercise corporate functions, it does not follow that the payment of taxes is thereby secured to the states. The act of congress imposes no penalty on either the banks or these stockholders for a refusal to submit to state taxation. Whatever forfeiture may be impliedly incurred, must be enforced in the United States courts, and thus the states would be left to such remedies as those courts, in the exercise of a very limited jurisdiction over corporations, may be at liberty to declare and enforce, in the absence of all legislation on the subject. Again, the penalty, to be effective, must be imposed on the corporation. But the taxation to which the proviso under consideration refers, is to be upon the stockholders. To hold the corporation responsible for the misconduct of its stockholders, in reference to matters entirely unconnected with the corporation, would be equally unjust and absurd. No such thing was contemplated by the framers of the act. They supposed they had the power to authorize the states to impose taxes on the banks created by the act, and that without such authority the states would be incapable of so doing. Conceding the power to regulate the banks created by congress, and to impose whatever condition should be deemed proper, it is quite clear that the act of congress has failed to impose on the banks the obligation to pay taxes to the states, and that it has not attempted to make them responsible for the acts, or the neglect of these stockholders, in relation to state taxation on them as such stockholders.

The laws of our own state, not the laws of congress, must furnish us with the guide by which to ascertain whether the stocks of these banks can be taxed, and the place and manner of taxing them. The first section of our tax law, (1 R. S. 5th ed. 905,) declares that all land, and *all personal estate* within this state, whether owned by individuals or by corporations, shall be liable to taxation, subject to the exemptions thereafter specified. The stock of the national banks *is per-*

City of Utica *v.* Churchill.

*sonal property,* and therefore taxable. By the fifth section of the same statute, all property, real or personal, exempted from taxation by the constitution of this state or under the constitution of the United States, is exempt from taxation.

I have attempted to show that the stock in question is not exempt by the constitution of the United States, and if not thus exempt, it is not exempted by any other provision of our statutes, unless it be by section 14 of the tax laws. That section is in these words : " The owner or holder of stock in any incorporated company *liable to taxation on its capital,* shall not be taxed as an individual for such stock."

This provision was intended to prevent double taxation ; first on the capital, against the bank, and next on the stock, against the stockholders. The capital and the stock, although distinct species of property, are both represented by the same amount of money or property. When a bank is incorporated with a capital of $100,000, and that capital is paid, it represents $100,000, and the stock issued represents another $100,000 ; yet there is in fact but one sum of $100,000 that ought to be taxed. It is just, therefore, to exempt the stockholder if the capital is taxed, and to exempt the capital if the stockholder is taxed.

When foreign corporations immigrate into the state, or are created here by competent authority, other than the state itself, and transact business here, the legislature may tax them in whatever way it deems best, if they are not exempt from taxation, and all such corporations are liable unless exempt by the constitution of the United States. As the national banks can not be taxed by the state, the contingency has happened, which subjects the stockholders to taxation under the fourteenth section above cited.

But the fourteenth section was intended to apply only to to domestic corporations, as they or their stockholders are subject to taxation at the will of the legislature.

In the case of foreign corporations, they can only be taxed on so much of their capital or property as is actually em-

ployed in their business in this state. The stock held by a citizen of this state in a foreign corporation is doubtless liable to be taxed as a part of his personal estate, independent wholly of the fact whether the capital of the corporation was, or was not, subject to be taxed on its capital.

The defendants being liable to taxation for the stock held by them in the bank, the next, and only remaining question is whether they are liable to be taxed in the first ward of the city of Utica, and it seems to me, that it is clear that such of them as do not reside in that ward are not liable to be taxed there. Section fifth, article first, title second of the statute regulating taxation (1 *R. S. 5th ed.* 908) declares that every person shall be "assessed in the town or ward where he resides when the assessment is made, for all personal estate owned by him." None of these defendants except Churchill resided in the first ward, and they were not therefore liable to be assessed there.

The assessors had no jurisdiction to assess any person in that ward, not a resident of it, and the assessment is consequently void. (*Vide The People* v. *The Supervisors of Chenango,* 11 *N. Y. Rep.* 563. *Mygatt* v. *Washburn,* 15 *id.* 316.)

This disposes of the case, as against all the defendants but Churchill. As to him, I think the assesment is, in form, irregular, but not void. The assessors were bound to put the whole assessed valuation of his personal estate into one column of the roll. They had no right to separate it into parcels, and place his name on the roll as many times as there were parcels. Such a mode of assessment might operate as a surprise, and as a fraud on him. But while such a mode of assessment is quite irregular and improper, it is not utterly void, so that such irregularity does not constitute a defense to the action.

I am of the opinion, therefore, that the plaintiff is entitled to judgment against Churchill, for the amount of tax assess-

ed against him, as a stockholder in said bank, with costs ; and the other defendants are entitled to judgment dismissing the complaint as to them with costs.

Judgment accordingly.

[JEFFERSON SPECIAL TERM, March 21, 1865. *Mullin,* Justice.]