UNION MUT. LIFE INS. CO. (MOORE v.). See Case No. 9,777.

UNION MUT. LIFE INS. CO. (WILKINSON v.). See Case No. 17,676.

---

## Case No. 14,374.

### UNION NAT. BANK v. CHICAGO.

[3 Biss. 82; 28 Leg. Int. 300; 3 Chi. Leg. News, 369; 14 Int. Rev. Rec. 77; 5 Am. Law T. 107; 6 Am. Law Rev. 166.] [1]

Circuit Court, N. D. Illinois. Aug., 1871.

TAXATION—STATE TAX ON NATIONAL BANKS—PAR VALUE OF SHARES — UNIFORMITY — NONRESIDENTS — COURTS — FEDERAL JURISDICTION.

1. Under the fifty-seventh section of the national currency act of June 2, 1864 [13 Stat. 99], suits may be maintained by, as well as against, national banks, in the United States courts of the district of their location.

2. Though courts of equity will not enjoin the collection of taxes, on the sole ground of their illegality, the prevention of a multiplicity of suits, or of injury for the redress of which the remedy at law is not so certain, adequate, and complete as in equity, will sustain jurisdiction.

[Cited in City Nat. Bank v. Paducah, Case No. 2,743.]

3. National bank shares cannot be included in the valuation for taxation by or under state authority at more than the par value thereof; the par value is the fixed value for taxation.

4. The reason is, that under the national currency act, as construed by the supreme court of the United States, the limited state taxation permitted is one of the conditions annexed to the grant of the franchise, and the shares are subjected to it without regard to the capital, property, or investments of the bank, and, therefore, such taxation is in the nature of a royalty upon the nominal value of the share.

5. Such taxation above the par value is not merely an irregularity, but renders the whole tax

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 5 Am. Law T. 107, and 6 Am. Law Rev. 166, contain only partial reports.]

inoperative and void. Taxes levied in the absence of persons or property, are ultra vires and void. Jurisdiction is as essential to valid legislative as judicial action.

6. Shares of stock represent a property interest, separate from the capital and property of the corporation, and, being incorporeal and intangible, are incapable of having an actual situs, save at the owner's domicil.

7. The state law of June 13, 1867, conflicts with the state constitution of Illinois, because it directs taxes to be assessed by the authorities of counties, towns, cities, and districts, upon the shares of the banks in the county or town where the bank is located, without regard to the residence of the owner, or the situs of the shares.

8. Such taxation, being void as to all shareholders not residing in the district where the bank is located, is also void as to those who do reside there.

9. And if the law be not valid as to residents of the state, the shares of non-residents cannot be taxed under it, as that would be in contravention of the laws of congress, and the federal constitution

These were ten bills in equity filed by the Union National Bank of Chicago, and nine other national banks, against the city of Chicago, and the city collector, to restrain the collection of the city tax upon the capital stock of the respective corporations for the years 1867 and 1870.

The averments of the bills were substantially the same in all cases; that the complainants are banking associations created under, and existing and doing business in the city of Chicago, by virtue of the act of congress, approved June 3d, 1864, commonly known as the "National Currency Act" (13 Stat. 99); that the authorities of the city of Chicago, assuming to act under and by virtue of the charter of said city, and in accordance with and by virtue of an act of the legislature of the state of Illinois, entitled "An act to provide for the assessment and collection of taxes on the shares of capital stock in banks and banking associations," approved June 13, 1867 (1 Gross' St. 618), levied a tax for municipal purposes upon all the shares of the capital stock of the complainants, such tax being at the rate of fifteen mills on the dollar of the value of said shares, said value being fixed by the assessor of the South division of the city of Chicago, and that the collector, by virtue of his tax warrant, demands of complainants the aggregate amounts of said tax, to be deducted from any dividends which may be declared upon their capital stock, and threatens to sell said shares of stock by virtue of his warrant, unless his demand shall be complied with. The bills also state that in the assessment roll of personal property in the South division of the city of Chicago, upon which the tax is levied, and in the collector's warrant, the names of all the holders of shares of capital stock are stated separately, and opposite thereto, in appropriate columns, are given the places of residence of the different shareholders, the number of shares held by each, and the assessed value thereof, showing that a number

of the stockholders do not reside in the South division of the city of Chicago, where the banking association is located.

The complainants claimed that the tax referred to was illegal and void for the following reasons, viz.: 1st. Because it was levied in the absence of the stockholders of the bank not residing in the South division of the city of Chicago, and no jurisdiction was ever obtained of them or of the shares of stock held by them. 2d. Because the act of the legislature of the state of Illinois, approved June 13th, 1867, in accordance with which said tax is pretended to be levied, is void, as being contrary to the constitution of the United States, and the acts of congress for the creation and control of national banks. And, 3d. Because said act of the legislature is contrary to article 9 of the constitution of the state of Illinois.

The special grounds for relief in equity were, that the stockholders refuse to pay said tax, and forbid its payment, threatening a multiplicity of suits against the banks in case the amount of the tax should be paid and deducted from dividends to be declared; and that, upon the other hand, if a sale should be permitted to be made by the collector, as threatened, irreparable damage will result to the bank and its stockholders, for which a suit at law would afford no adequate remedy; and that, in either event, a multiplicity of suits will be prevented by a determination in equity of the question of the liability of the banks and their stockholders to pay the tax.

The defendants filed demurrers to the bills on the several grounds stated in the opinion. By agreement of counsel, all the cases were heard together, upon motions for injunctions.

Melville W. Fuller and Mr. Smith, for complainants, argued in support of the injunction upon the following points and authorities:

I. This court has jurisdiction. Gibson v. Kennedy, 8 Wall. [75 U. S.] 498.

II. Grounds of equity interposition exist. Dows v. City of Chicago, 11 Wall. [78 U. S.] 108.

III. The warrant for 1867 has long since expired, and the present collector cannot execute it. The demurrer admits this.

IV. The levy for the taxes of 1867 is void because value and ownership of shares for that year were referred to a different point of time than that to which all other personal property was. (This was elaborated at length with full citation of authority.)

V. The act of June 13, 1867, is unconstitutional and void. Shares of stock are incapable of situs save at owner's domicil. Williams, Pers. Prop. 191; Ang. & A. Corp. § 458. It is not within legislative authority ordinarily to tax shares of non-residents. Union Bank v. State, 9 Yerg. 490; State v. Ross, 3 Zab. [23 N. J. Law] 517; Conwell v. Town of Connersville. 15 Ind. 150; Dwight v. Mayor, etc., 12 Allen, 322; McKeen v. Northampton Co.,

49 Pa. St. 519. The taxing power can only be exerted upon persons and property within its jurisdiction. In the case of non-residents, neither persons nor property within jurisdiction. As to national bank shares this is otherwise (2 Brightley's Dig. pp. 56, 57); but residents can only be taxed in such manner and place as may be lawful, which is in the manner and for the purposes designated in the state constitution. Personal property having actual situs in the city of Chicago can alone be taxed. Append. Pub. Laws, 1867, p. 5. In Illinois the constitutional rules of taxation are: 1st. That taxes shall be by valuation, so that every person or corporation shall pay a tax in proportion to the value of his or her property. 2d. And taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same. State Const. article 9, §§ 2, 5. These provisions are restrictions. 51 Ill. 130; 34 Ill. 267; 42 Ill. 9. The act of June, 1867, conflicts with the constitution because it directs taxes to be assessed without regard to the residence of the owner, or the situs of the shares. This is in disregard of the rule of uniformity in respect to persons and property within the limits of the county, city, town, or district of the shareholder's residence, when other than that of the bank's location (12 Ill. 140; 25 Ill. 561; 30 Ill. 146), and being void to this extent, it is void as to shareholders residing in the place where the bank is; and if as to all residents is as to non-resident shareholders. Van Allen v. Assessors, 3 Wall. [70 U. S.] 579; Const. U. S. art. 4, § 2. See 2 Kent, Comm. 333; Taxation of National Banks, 53 Me. 594; Markoe v. Hartranft, 6 Am. Law Reg. (N. S.) 490; Austin v. City of Boston, 14 Allen, 364; Clapp v. City of Burlington, 42 Vt. 579. Jurisdiction is as essential to valid legislative as to judicial action. St. Louis v. The Ferry Co., 11 Wall. [78 U. S.] 430. The requisite legislative jurisdiction does not exist as to non-residents where the property is in itself incapable of an actual situs. Railroad Co. v. Jackson, 7 Wall. [74 U. S.] 266; City of Dunleith v. Reynolds, 53 Ill. 45; St. Louis v. Wiggins' Ferry Co., 40 Mo. 580; Cooley, Const. Lim. 500. The corporation receives the benefit of protection where it is located, and might well enough be there taxed, but that is merely an argument against the policy of exempting the bank. As to the shareholder, he is taxed where he resides and receives the income from his share. The immediate right to receive dividends, and the remote right to share on winding up, is all a stockholder has. Union Bank v. State, 9 Yerg. 501; Fisher v. Essex Bank, 5 Gray, 373. Residents are subject to taxation upon shares in foreign corporations, and non-resident holders of shares of Illinois corporations are so subjected in their own states. To authorize taxing the latter here is double taxation, and so if other states pursue that rule as to our citizens. The adverse argument is: (1) That the general assembly has power to give bank shares an ac-

tual situs for taxation. (2) That by the act of 1867 this has been done. But the answer is, that it has not and cannot be done. The levy and collection of taxes is a proceeding either in personam, or in rem. The act of 1867 provides purely for levy and collection in personam, except as to non-residents. Decision in National Bank v. Com., 9 Wall. [76 U. S.] 353, shows that state taxes might be collected at place of bank's location, by a proceeding equivalent to one in rem, in the nature of a garnishee process, and sustained by that analogy. Under our system, moneys, credits, and effects are taxed in personam. The warrant is a lien on all the owner's personalty. Hill v. Figley, 23 Ill. 420. The act of 1867 provides for proceedings in personam, and does not purport to change the situs of bank shares, which is only material where the proceeding is in rem, and the res proceeded against the shares themselves. It is true a mode of reaching shares for taxation at the place of the bank's location might be devised, but tangibility cannot be imparted to that which is intangible. The rule that personal property follows the person of the owner is only a fiction when the property is itself capable of an actual situs, because then the fact is contrary to the rule; but as to stock, the rule is founded on the fact, or rather it is the fact, and not the rule, which settles the question. In the original charters of corporations it might be provided that shareholders should take cum onere, that they could exercise the rights arising upon their shares only in the place of the location of the corporation, but unless this were so originally provided, the obligation of the contract would be impaired by any subsequent legislative attempt to accomplish it. Congress, as to corporations created by it, can establish a uniform rule excluding taxation elsewhere than as designated, but state legislatures cannot. Redf. R. R. Supp. p. 493.

VI. The shares cannot be taxed above the par value thereof. Van Allen v. Assessors, 3 Wall. [70 U. S.] 573; Bank of Commerce v. New York City, 2 Black [67 U. S.] 620.

M. F. Tuley, Corp. Counsel, for defendants.

BLODGETT, District Judge. A preliminary objection is raised on behalf of the defendants, that as the banks are located in the Northern district of Illinois, and the defendants also reside there, the court has no jurisdiction to entertain these suits. It has, however, been decided by the supreme court of the United States in Kennedy v. Gibson, 8 Wall. [75 U. S.] 498, that under the 57th section of the national currency act, suits may be brought by, as well as against, associations organized under that act, in the United States courts of the district in which such associations are established. It is true that the word "by" is omitted from the text of this section, but the court hold that reading the section by the light of another of a prior act on the same general subject, the omission is to be regarded as an accidental one. This court can not therefore decline to take jurisdiction because these banks are established, and the defendants reside, in the same district.

It is further objected that these bills are improvidently filed in view of the rule laid down in Dows v. City of Chicago, 11 Wall. [78 U. S.] 108, that a suit in equity will not lie to restrain the collection of a tax on the sole ground that the tax is illegal, but there must exist, in addition, special circumstances, bringing the case under some recognized head of equity jurisdiction. Conceding this to be so, it is not decisive of these cases, as the question still remains whether any such ground of equity interposition is shown to exist here. And it appears to me that such grounds do exist.

The banks occupy, as it were, the position of stakeholders. They are the custodians of the property, money and funds of the shareholders, when the latter become entitled thereto, as in case of the declaration of dividends The shareholders insist that their dividends shall be paid to them. The collector demands that they shall be paid to him, or a sufficient amount thereof to defray the taxes. And the banks invoke the aid of a court of equity to determine to which of the parties the funds belong or should be paid. They assert, and the bills upon this motion are to be taken as true, that they are notified by their shareholders that if they pay these taxes suits will be commenced at once against them. At the same time, if they do not, the state law not only, at least so far as non-resident shareholders are concerned, undertakes to make their officers personally responsible for the amount, which would be, perhaps, immaterial if the assessments be invalid, but the collector threatens to sell the shares to make the taxes therefrom.

It is obvious that the latter course, if taken, would operate to prejudice these corporations in the public mind, and lead to further and harassing litigation, working that kind of injury to the corporation which, because the law affords no such beneficial and complete remedy for it as the nature of the case requires, may be deemed irreparable.

Reference to the Case of Dows [supra] confirms this view. Mr. Justice Field, in delivering the opinion, says in regard to the cross-bill filed by the bank in that case, that it presents different features from those of the original bill; that the bank "insists that if it paid the tax levied upon the shares of all its numerous stockholders out of the dividends upon their shares in its hands, which it is required to do by the law of the state, or if the shares were sold, it would be subjected to a multiplicity of suits by the shareholders, and were it an original bill the jurisdiction of the court might be sustained on that ground." This clearly intimates the judgment of the supreme court upon this

branch of the case, and is, to such an extent, authority in favor of the jurisdiction, that I feel bound to follow it.

I find myself compelled then to pass upon the validity of the taxes in question. Courts interfere with the collection of taxes with reluctance, but when questions directly calling for judicial action are presented, there is no alternative but to decide them, although they may involve the legality of revenue proceedings. The provisos to the 41st section of the national currency act of 1864 are as follows (13 Stat. 112): "Provided, that nothing in this act shall be construed to prevent all the shares in any of the said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under state authority, at the place where such bank is located and not elsewhere; but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state: provided further, that the tax so imposed under the laws of any state upon the shares of any of the associations authorized by this act shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the state where such association is located: provided, also, that nothing in this act shall exempt the real estate of associations from either state, county, or municipal taxes to the same extent, according to its value, as other real estate is taxed."

And by the 1st section of the act of February 10, 1868 (15 Stat. 34), the words "place where the bank is located, and not elsewhere," are declared to mean "the state in which the bank is located," thereby localizing the authority imposing the tax, but not the assessment of taxes at the place of the location of the bank. It is subject to these limitations. that taxes may lawfully be levied by or under state authority.

In three of the cases before the court, complainants insist that the assessment of taxes attempted to be made upon their shares is illegal and void, because the municipal authorities charged with the duty of assessing taxes have placed those shares in the valuation for taxation at a sum above the par or denominational value thereof, varying from ten to twenty per cent. And the question is, can national bank shares be valued for taxation at a higher valuation than the par value of the share?

In Van Allen v. Assessors, 3 Wall. [70 U. S.] 573, it was insisted that in levying taxes upon the shares of national banks, regard should be had to the fact that a part or the whole of the capital of such associations was invested in national securities, declared by the statutes authorizing them to be "exempt from taxation by or under state authority."

In the dissenting opinion of the chief justice (Wayne and Swayne, JJ., concurring), the position is ably argued that these shares can not be subjected to taxation by the state, irrespective of the mode of investment of the capital in securities exempted from taxation, and the chief justice, inter alia, says that what the assessor would have to do is "to ascertain the value of the whole property of the association, and deduct the amount of bonds. The remainder, divided by the number of shares, would give the value of each share to be taxed, and the assessor must value the whole property and divide it by the number of shares, in order to make a true valuation of shares. If he does not do this, he must assess the shares at an arbitrary or speculative valuation. This is not what is required. The law demands true valuation; and true valuation, with deduction of bonds, places the shareholder on exact equality with the holder of other moneyed capital, which the law also demands. No other mode of valuation secures that equality." Page 601.

The majority of the court, however, held that the limited state taxation allowed by the act was but a condition annexed to the enjoyment of the new use and application of the United States bonds, to which they were enabled to be put under the grant of the franchise. and imposed as a burden thereon, and in that aspect, that the interest of the shareholder could be taxed within the limit of the act without reference to the property and capital of the bank; and the learned judge, Nelson, who delivers the opinion, reviews the various sections of the law to sustain this proposition.

The conclusion reached and the reasoning upon which it rests, taken in connection with the language of the dissenting judges, leave no doubt in my mind that the court regarded the tax as in the nature of a royalty for the grant, annexed to the franchise. The ruling is distinctly that taxes by the state are permitted to be imposed wholly irrespective of the character or description of the property or capital of the bank; and this being so, it logically follows that the par value of the share is the fixed value for taxation, whether the shares may be said to have an actual value above or below the nominal amount. These bills allege that the shares in these instances have no market value, and that the assessing authorities have affixed a valuation higher than par, arbitrarily and without resort to any basis of values whatever. It is clear that this cannot be done, and, as we have seen, it is equally true, under the decision just referred to, that the values cannot be determined by reference to the capital, property and investments of the bank; for if this were so, then the deductions must be allowed, which the supreme court has held cannot be done for the reasons given. Reference to the different sections of the act confirm this view. They provide for a certificate of the numbers of the shares: the division of the capital stock into shares of one hundred dollars each; the personal liability

of the shareholder to an amount equal to the sum invested and the par value of the shares held; the casting of one vote for each share; the payment in of the amount of the share in specified installments; a list of the number of shares held by each shareholder, open to the inspection of state tax assessors, etc., etc., and the term "share" is used throughout in the same signification. The personal liability clause is, perhaps, as noticeable as any other, in the way of illustration. The shareholders of the association are held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association to the amount of their stock therein at the par value in addition to the amount invested in such shares. This provision is not of itself conclusive, but it bears with much weight in favor of the position, and other provisions might be cited more at length than has been done, as tending to sustain it.

It could never have been intended that the assessing authorities should be permitted to exercise an arbitrary and unlimited discretion, and it seems to me that the whole tenor of the act, and of the decisions of our highest judicial tribunal upon questions arising under it, satisfactorily indicate that the state authorities have no power whatever to tax these shares above the value thereof, as fixed by the act itself.

The error in these cases is a fundamental one. It is not a mere irregularity. It goes to the very foundation of the tax, and renders it wholly inoperative and void.

It is also claimed, in all these cases, that the tax attempted to be levied for the year 1867 is void because of the invalidity of the state law of June 13, 1867. Other objections to the legality of this tax are urged, but the view which I take of the main question renders their consideration unnecessary.

I may remark, however, in passing, that I do not, as at present advised, perceive how the present city collector can lawfully proceed upon the warrant issued in 1867. These warrants stand upon the same principle as writs of fieri facias, and it would seem that the common law rule, that the officer receiving the process to execute should complete it, applies. But I need not dwell upon this point, as it becomes immaterial under the circumstances.

The validity of the law of 1867 is questioned upon the ground that its provisions are in contravention of the state constitution. The law was passed, and the assessment of taxes complained of made, under the constitution of 1848.

Sections 2 and 5 of article 9 of that instrument are as follows:

"2. The general assembly shall provide for levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or her property. * * *"

"5. The corporate authorities of counties, townships, school districts, cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes, such taxes to be uniform in respect to persons and property, within the jurisdiction of the body imposing the same. And the general assembly shall require that all the property within the limits of municipal corporations, belonging to individuals, shall be taxed for the payment of debts contracted under authority of law."

And by a series of adjudications of the supreme court of Illinois, it has become settled law that these provisions are restrictions upon the power of taxation by the legislature, or any authority under it. All taxes, therefore, assessed by municipal corporate authorities, must be proportionate and uniform within the jurisdiction of the body imposing them. Where there is jurisdiction neither of persons nor property, the imposition of a tax would be ultra vires and void. Jurisdiction is as necessary to valid legislative as valid judicial action.

Shares of stock are incorporeal personal property, and as such are held incapable of having any situs, save at the domicil of the owner. In the eye of the law they have in themselves no locality. They accompany the person of the owner where he goes, and he may deal with them and dispose of them according to the law of his domicil, which, if he die intestate, governs their disposal.

The peculiar character of this class of property is adverted to by Mr. Justice Nelson in the case of Van Allen, already cited. He says: "A striking exemplification may be seen in the case of Reg. v. Arnaud, 9 Adol. & E. (N. S.) 806. The question related to the registry of a ship owned by a corporation. Lord Denman observed: 'It appears to me that the British corporation is, as such, the sole owner of the ship. The individual members of the corporation are no doubt interested, in one sense, in the property of the corporation, as they may derive individual benefits from its increase, or loss from its decrease, but in no legal sense are the individual members the owners.'"

The shareholders are not the owners of the bonds, investments, surplus and property of the bank. They possess only the intangible right to the dividends, if any, upon their shares, and to the residuum upon the winding up of the corporation. The distinction between such a right and personal property capable of an actual situs is obvious. And it is a distinction which seems to have been borne in mind in the enactment of the city charter which provides for the taxation only of such personal property as has its actual situs within the city, and further, that state laws then in existence, or which might afterwards be adopted, shall govern in municipal assessments, unless in conflict with the provisions of the charter.

The act of June 13, 1867, directs taxes to

be assessed by the authorities of counties, towns, cities and districts upon the shares of these banks in the county or town where the bank is located, without regard to the residence of the owner or the situs of the shares, and in that respect I regard it as a violation of the constitution of the state.

The complainants show, and it is not denied, that their shareholders are scattered over the state, and through other states, and such taxation upon them appears to me a clear infringement of the constitutional requisite that all assessments by the corporate authorities of cities, etc., shall be uniform in respect to persons and property within their limits. This compels the taxation of the stock owned by residents of the state in the county, city, town or district where they reside, for the purpose of collecting county, city, town or district taxes, and a failure to do so destroys the rule of uniformity with respect to property within the limits of the body imposing the taxes, while neither the persons nor property are within the jurisdiction of the taxing power at the place of the bank's location. If, then, this statute is void as to those who do not reside in the district where the bank is located, it must be so as to those who do, because it would be then undeniable that every person would not be obliged to pay a tax in proportion to the value of his or her property, and the taxes for state purposes would not be levied with uniformity. And if the law be not valid as to shares of stock belonging to residents, the shares of non-residents cannot be taxed, because the provisos of section 41 of the act of 1864, inhibit any tax upon non-residents that is not imposed upon residents of the state, and such a regulation would be in conflict with the federal constitution, which says, "the citizens of each state shall be entitled to all the privileges and immunities of the citizens of the several states." Article 4, § 2. I cannot avoid the conclusion that this law violates the imperative rule of the constitution.

It ought to be observed that, when the act of June, 1867, was passed, controversy had arisen as to the meaning of the words in the provisos to the 41st section of the law of congress, that the shares should be assessed "at the place where the bank is located." The language of the proviso is not perspicuous, and I am inclined to think that the framers of this law supposed congress to have required the shares to be assessed in and for the benefit of the taxing district of the bank's location. It is not unnatural that this view should have been entertained. Courts of the highest respectability arrived at this conclusion, as in Maine and New Hampshire, while others, as in Massachusetts and Pennsylvania, were of a different opinion. In Massachusetts, the law for the assessment of national and other bank shares, provided that this should be done at the residence of the respective shareholders, and the question was raised, that this was contrary to the proviso of the 41st section; but the supreme court of the state held otherwise, and their judgment was affirmed by the United States supreme court, though upon another ground. The subsequent action of congress by the passage of the law of February, 1868, confirmed the correctness of the views of the Massachusetts court, and resolved the doubt in favor of the position that the intention was to localize the authority imposing the tax, and not the assessment of taxes at the place of the location of the bank.

The anomalous provision in the Illinois act of 1867, which gives the collector of the particular taxing locality a kind of "roving commission" to execute his warrant anywhere within the limits of the state, is a sufficient indication of the embarrassment that was felt by the general assembly in framing this enactment.

The defects, however, may be readily remedied by the state legislature. Upon the argument of these applications, it appearing that the questions involved were of sufficient importance to demand, and both parties being desirous of obtaining, the decision by the tribunal of last resort, and there being apparently no substantial dispute as to the facts, I suggested to counsel the propriety of making an agreed case, that a final result might be obtained as speedily as possible; but, as the suggestion was not acted on, I have, in the discharge of my judicial duty, passed upon the questions myself, so far as necessary to determine these preliminary motions.

The injunctions, as prayed, will be granted.

NOTE. After this decision by Judge Blodgett, the supreme court of Illinois considered this question in First Nat Bank of Mendota v. Smith [65 Ill. 44], and held that this taxation was legal and constitutional; that the legislature had the right to fix the situs of incorporeal property, such as bank shares; that the act of June 3, 1867, violated neither the uniformity nor equality of taxation, and was a proper and necessary exercise of the legislative power The court refused to concur in the views of the United States circuit court for the Northern district of Illinois. Upon the rendering of this decision, Judge Blodgett ordered a re-argument of the question in a similar case, brought by the same banks, to restrain the collection of the taxes for 1872, and adhered to his views as expressed in the above opinion, and allowed the injunctions in these cases. By stipulation of parties, one of these ten cases was taken by appeal direct to the supreme court of the United States, where it is now pending, the others to abide the event. The supreme court of Pennsylvania held that the state legislature has the power to tax the capital stock of national banks; that the act of congress of February 10th, 1868, only restricts the rate of taxation, and not the taxation itself; and also that such stock should be assessed for taxation at its current value in the market where the bank is located, and that the owner, not having appealed from the assessment, cannot insist that the tax was illegal because not based on the par value of the stock. Everett v. Louder, 5 Chi. Leg. News, 195. The supreme court has lately passed upon a case somewhat similar to the above, holding, in the "State Tax on Foreign-Held

Bonds," 15 Wall. [82 U. S.] 300, that the power of state taxation is limited to persons, property and business within her jurisdiction; that bonds issued by a railroad company are property in the hands of the holders, and when held by non-residents of the state in which the company was organized, they are property beyond the jurisdiction of that state; that a state law requiring the treasurer of a company to retain a percentage of the interest on bonds held and payable outside of the state, was not a legitimate exercise of the taxing power, but under the pretense of levying a tax impaired the obligation of the contract between the parties: and that the tax laws of a state could have no extra-territorial operation, nor affect the rights of non-residents under contracts with citizens of the state.