# National Commercial Bank of Mobile
## v.
## Mayor, Aldermen & Common Council of Mobile.

1. *National Banks; how far subject to State taxation.*—National banks, or banking associations, being instrumentalities of the General Government, are not subject to control or taxation by the States, except in so far as Congress may expressly permit.

2. *Same.*—Real estate owned by a National Bank is taxable by State authority; and the separate shares of its capital stock, as personal property of the holder of such shares, may be taxed by the State or its municipal subdivisions, so long as the tax "is not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State," and the shares owned by non-residents are taxed at the place where the bank is located.

[National Commercial Bank of Mobile v. Mayor, &c., of Mobile.]

3. *Same; what assessment illegal.*—An assessment upon the shares in gross, or upon the capital stock of the bank, against the corporation, is not authorized by the act of Congress, and is illegal.

4. *Bank; when may be required to pay tax on shares of stock.*—A State may require a National Bank to pay for its stockholders the taxes legally assessed against their respective shares

5. *Injunction to restrain collection of tax illegally assessed; when does not lie.*— An injunction will not lie to restrain the collection of a tax illegally assessed by municipal authorities upon the shares of a National Bank in gross, instead of against the individual share-holders, though such municipal corporation be insolvent; there are ample remedies at law.

APPEAL from Chancery Court of Mobile.

Heard before Hon. H. AUSTILL.

This was a bill in equity filed by the National Commercial Bank of Mobile against the Mayor, Aldermen & Common Council of the City of Mobile, and W. H. Sheffield, its tax-collector, seeking to enjoin the collection of a tax, which the corporate authorities assessed upon the shares of the capital stock of the bank in gross.

The bill shows that the bank was incorporated on the 13th day of May, 1871, and chartered as a national banking association, under the laws of the United States, and is located and doing business in the city of Mobile. It avers that at the time of the assessment upon its capital stock in gross, the same "was not and is not the property of the banking corporation, but was and is owned by a great number of different persons, some of whom are not residents of Mobile, and many of whom are not residents of the State of Alabama, and that this capital stock is invested in bonds of the United States, in the office of the Comptroller at Washington."

The authority of the City of Mobile to assess and collect the tax is denied, and reference is made to the act of Congress to provide a national currency, secured by pledge of United States bonds, and to provide for the circulation and redemption thereof, approved June 3, 1864, and the act of the General Assembly of Alabama, entitled an act to fix the rate of taxation upon the shares of national bank associations and savings banks in the State, approved February 27, 1875. The bill alleges that the bank paid the city taxes on its real estate, but not upon its capital stock, and the city tax-collector is proceeding to collect the same, and has levied on certain personal property of your orator, and advertised the same for sale, and will sell it, unless restrained, &c.

It is also stated, that the municipal corporation of Mobile is insolvent; that executions against it have been returned *nulla bona,* and "that all its property and the income are under a statutory mortgage, which amounts to more than

the value of its property, and any income it can lawfully raise." Sheffield is alleged to be a man of small means, and unable to respond to any judgment which might be obtained against him, to recover the tax assessed upon the capital stock, which tax amounts to over $10,000.

The bill further alleged that "if such illegal tax be collected of your orator, it could not retain the same legally, or successfully, or under any law, out of the dividend of the share-holders on whose shares such taxes are demanded, the amount of such illegal taxes as it might pay, and that it could not collect by law such taxes if paid, from the several share-holders, owners of the stock so assessed, and that the enforcement of such illegal tax out of your orator would subject it to great loss and injury, for which the law affords no adequate remedy, and that such would also be the result if the bank paid the taxes, and subjected to suits, as it might be, by each of the shareholders, by reason of so doing, and that in either event a multiplicity of suits would be rendered necessary to adjust the rights of the parties, and that irreparable damage would be done to your orator."

The bill prays that the defendants be perpetually enjoined from proceeding to collect said pretended taxes from your orator, and that the property levied on may be released and returned, and for such other and further or different relief as might seem meet. A temporary injunction was also prayed and granted.

The answer of the defendants, which was put in on oath, admits the corporate character of the bank, and the assessment and levy, as averred in the bill. It states that the assessment was made in strict pursuance of the power of taxation given by its charter, and in the manner therein provided, and in the ordinances passed to carry it into effect, which have in no wise been exceeded, and that the tax assessed against the bank is at no greater rate than is assessed by the municipal authorities of Mobile, upon other moneyed capital in the hands of individual citizens of said city, and that all the banks organized under the authority of the State and located in the city of Mobile, have been taxed in the same manner, except those exempted from such taxation by their charters, granted by the State before the act of Congress, under which complainant was incorporated. The answer asserts the unconstitutionality of the act of the legislature approved February 27, 1875, restricting taxation upon the shares of National Bank stock, &c., and the right of the corporate authorities to assess the tax complained of. It is admitted that Sheffield, the tax collector, has not sufficient means to respond to a judgment for the amount of the taxes

involved, and also admits the existence of the statutory mortgage upon the property and revenue of the city (except such as may be necessary for the current expenses of the city government), "but respondents are unable to say whether or not the mortgage debt amounts to more than the revenue which the city can lawfully raise." It also states that the city authorities have power, under the constitution, to assess a tax on property not to exceed two per cent. per annum, and that for the years during which the tax complained of was levied, they have not found it necessary to go to that limit. The return of "*nulla bona*" upon executions against the city is admitted, but it is insisted that this is not evidence of insolvency; as such debts are not expected to be paid from the corporate property, but by *mandamus* to raise sufficient taxes; and, in every case, *mandamus* issued on such judgments to compel satisfaction have been complied with, without reaching the constitutional limit of taxation. It is also averred that, if taxes were wrongfully exacted of complainant, it would have the right to have the money thus collected paid back, before it could be applied to creditors, and that this right could be enforced by *mandamus*, wherefore defendants deny that the Mayor, Aldermen and Common Council of Mobile is insolvent, or that complainant, if compelled to pay said taxes, would be unable, by reason of such insolvency, to recover the money. In the answer was also incorporated a demurrer for want of equity.

The cause was submitted to the court on motion to dissolve the injunction on the denials in the answer, and to dismiss the bill for want of equity.

The Chancellor granted the motion, dissolved the injunction, and dismissed the bill; and this decree is now assigned as error.

J. LITTLE SMITH and JOHN T. TAYLOR, for appellant.—The tax was assessed against the *bank itself* on the value of all the shares of its stock in gross, and not on the several shareholders upon the value of their respective shares. The capital stock of the bank consists of non-taxable bonds of the United States. Such banking associations are treated as financial instruments of the United States government, and the States can only impose taxes in the manner and under the limitations respecting this matter imposed by the acts of congress. These are found in sections 5210 and 5219 of the revised statutes of the United States. Under these, the State itself could not tax the bank as done in this case, and of course it could not delegate power to said city to do so.—2 Black. 631; 2 Wall. 200; 1 Otto. 34; 4 Otto. 417; 9 Wall.

359; 5 Otto. 22; 3 How. 133. But the State never attempted to confer such power on the city. The city was authorized to pay taxes on the real and personal property situate *within the corporate limits*, and this was copied from a charter enacted before national banking associations had any existence. Its machinery requires an assessment to the owner.—City Charter, §§ 37–38. This is further manifested by the fact that the act of the State legislature delegating the power to tax such shares, contains none of the limitations required by the act of congress. But where the State delegates its power to tax such shares to commissions of assessment, or to municipal bodies, the State law should contain these limitations.—3 Wall. 581; 2 Otto. 417; 9 Wall. 470. For the form of such a law, see 4 Otto. 527. As the bank and not the shareholder was assessed, and as that was unlawful, the tax was laid without any jurisdiction in the city; was void, and was not collectable from the city; and that should settle the questions in this case, except the question of jurisdiction on the part of the Chancery Court.

The case, however, has been argued as if the tax had been assessed against the shareholder, and it was asserted that the bank was liable for this alleged debt of the shareholder. That result cannot be accomplished without a State law to that effect. The general rule is that, for the purposes of taxation, the situs of personal property is the residence of its owner. It is also a general rule that one man is not bound for the debt or taxes of another, and that he cannot become the creditor of such tax-payer by the voluntary payment of his tax, without the tax-payer's request.

The act of February 27, 1875, now embodied in par. 7, a., § 369 of the Code of Alabama, was enacted to accomplish both objects. It allowed assessments where the bank was located, and it provided that the assessment should operate as a lien on the shares assessed, and also as a statutory garnishment on the bank for the payment of the tax.

If that act is constitutional, it *excludes municipal corporations from any power to tax the shares in such Associations*, and destroys any alleged right of the city to collect the tax in this case. It is said to be unconstitutional under the decision in *The Mayor, &c., v. The Stonewall Ins. Co.* That case determined that no discrimination under the tax laws could be constitutionally made in favor of corporations over the rights of individuals. There is no such question here; for the shares of such associations are taxed alike, whether owned by corporations or individuals. It is not, therefore, unconstitutional for that reason.

If the act is unconstitutional, then the only law authoriz-

ing the State itself to tax such shares is that now codified in Par. 13, of section 362 of the Code of Alabama.

This law, however, does not authorize the collection of the shareholder's debt from the bank, nor does the act of congress provide that municipalities may do so. It simply authorizes State legislatures to provide such machinery for collection, if they think proper to do so. Neither does the State law provide for the assessment of the shareholder, except in the county of his residence. All the provisions of Articles III and IV, of Part I, Title 7, Chapter 2 of the Code, contemplate the assessment of personal property in the county of the owner's residence, and this is the usual rule under the city charter.—*St. John v. Mayor, &c.*, 21 Ala. 227

The case of *McIver v. Robinson*, 53 Ala. 456, was not a case of contest between the tax collector and *the bank*. The share was assessed to *the owner*, and was about to be collected by a levy on and sale of *his* property. Here *the bank* is improperly assessed, and the attempt is to collect from *it*.

The case does show that the assessment was made in the county where the bank was located, and not in the county of the shareholder's residence; but the act of February 27, 1875, which authorized this, was not assailed as unconstitutional, and the petition of McIver stated the broad proposition that the shares were not subject to taxation by the State or county, and this was the *general* proposition discussed by the court. In point of fact, the decision cannot be sustained, if the act of February 27, 1875, be held to be unconstitutional, but it is not the same case as that under consideration.

The Chancery Court had jurisdiction of the case.

1. The allegations are, not only, that executions against the city had been returned "no property found," but they aver that its property and its revenues, however it may attempt to raise them within the limits of its power, are mortgaged, so that any further attempt to raise means for refunding an illegal tax could not be made available.

2. The bank could not under the law, as it stood, have legally charged any tax it may have paid to any shareholder, and there was no jurisdiction in the city to assess it for their property. If, therefore, the bank paid it, it could not have been reimbursed, and the attempt would have led to a multiplicity of law suits, all which could be avoided by injunction; without which the injury to the bank would have been irreparable.

See the remarks as to the allegations of the cross-bill, in *Dowe v. City of Chicago*, 11 Wall. p. 112.

3. As the city was without jurisdiction to make the assessment, there was no proper case for application to the court

of assessment, nor any proper case for proceedings by *certiorari.*—Burrough's on Taxation, p. 439, §§ 142, 143, ch. xxi.

WILLIAM G. JONES, *contra.*

Appellee's brief did not come into the Reporter's hands.

MANNING, J.—The main question—one that has been ably and strenuously argued in this cause—concerns the validity of a taxation by the city of Mobile against appellant, the National Commercial Bank of Mobile, of a certain *per centum* upon the amount ($350,000) of its capital; appellant being a "national banking association," under the act of Congress "authorizing, providing for the establishment of, and regulating such institutions."

It is through them, called generally "National Banks," that the "national currency," payment of which is guaranteed by the general government, is emitted and kept in circulation. The notes of which this currency consists, designed, engraved, stamped and numbered with the purpose of preventing them from being counterfeited, are obtained from the government by the national banks, upon their depositing in exchange for them and as security for their payment, interest bearing bonds of the United States, to an amount exceeding by ten *per centum* that of the notes received. The amount of the bonds thus used and deposited by any bank must not be less than one-third of its capital, and is generally a much larger proportion, often the whole of it; and those bonds being securities of the United States for money borrowed, are not subject to State or municipal taxation.

The statutes relating to these banks, after enacting that "in lieu of taxes to the United States, *every association* shall pay to the treasurer,   .   .   .   .   .   a duty of one-half of one *per centum* each half year upon the average amount of its notes in circulation, and a duty of one-quarter of one *per centum* each half year upon the average amount of its deposits, and a duty of one-quarter of one per centum each half year on the average amount of its capital stock *beyond the amount invested in United States bonds,*"—further provide, that "nothing herein shall prevent all the *shares* in any association from being included in the valuation of the personal property of the *owner or holder of such shares,* in assessing taxes imposed by the authority of the State within which the association is located; but the legislature in any State may determine and direct the manner and place of taxing all *the shares* of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon

other moneyed capital in the hands of individual citizens of such State, and that *the shares* of any national banking association *owned by non-residents* of any State, shall be taxed in the city or town where the bank is located and not elsewhere. Nothing herein shall be construed to exempt the real property of *associations* from either State, county or municipal taxes to the same extent, according to its value, as other real property is taxed."—Rev. Stat. U. S. §§ 5214, 5219.

Upon a careful reading of this law, it will be observed that these *associations,* the national banks, are themselves, in their corporate capacity, expressly declared to be subject to impositions for the public revenue, in two cases only : first, in favor of the United States, by the duties to be paid to the treasurer, from which it seems .intended that the amount they have invested in United States bonds shall be exempt ; and secondly, in favor of each State, upon their real property therein, according to its value. Their liability to this tax upon their real estate was probably conceded in deference to the opinion, hereinafter cited, of the Supreme Court, delivered by Chief Justice Marshall, concerning the sovereign rights remaining in the States over the property within their jurisdiction.

The statute does not, in words, inhibit a State from imposing a tax against the national banks within its borders, on their capital, or any thing else belonging to them ; but by expressly recognizing the right of State taxation against them, upon their real estate only, and by providing for such tax against the *shareholders* of the banks upon the value of the shares they may respectively own, it seems to be implied that this is as far as a State may lawfully go in subjecting these associations to such burdens, and 'the only manner in which they can be imposed. Is this a correct conclusion ?

The answer to that question, it seems to me, begins in the great case of *McCulloch v. Maryland,* decided sixty years ago. (4 Wheaton, 316–437.) An act of that State made it highly penal for officers of any branch bank, that might be established therein without its authority, to issue notes of such bank to circulate as money, except upon stamped paper to be furnished by the State, and for which it charged a heavy tax; and McCulloch, cashier of a branch in Baltimore of the Bank of the United States, was prosecuted for issuing there the notes of this bank in violation of that law. Webster, Pinckney, and other lawyers of the greatest ability, argued the cause ; and the Supreme Court of the United States, through Chief Justice Marshall, after a very able discussion, and laying down a rule with the argument on which it was founded, for determining the subjects that are

within the reach of State taxation, declared it to be the unanimous opinion of the court, "that the States have no power, by taxation or otherwise, to retard, impede or burden, or in any manner control the operations of the constitutional laws of Congress to carry into execution the powers of the general government;" and because this branch of the Bank of the United States was an agency or means authorized by a constitutional law, through which that government was executing those powers, the act of Maryland laying the tax was pronounced to be null and void. The Chief Justice added : "This opinion does not deprive the States of any resources which they originally possessed. It does not extend to a tax, paid by the real property of the bank in common with the other real property within the State, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution in common with other property of the same description throughout the State."

The principles of this opinion have been ever since adhered to by the Supreme Court—and have been several times applied in other celebrated cases. In *Osborn v. The U. S. Bank*, (9 Wheaton, 738,) it was upon an elaborate re-argument of the subject, explained why the capacity to issue its own notes as a currency, and do the business of a bank of discount, deposit and circulation, faculties which might be exercised by individuals or corporations wholly unconnected with public affairs,—was considered essential to the vitality and usefulness of the bank of the United States as a government fiscal agent, and why it, therefore, was not taxable in respect of the advantage it derived from the employment of those faculties. In *Weston v. The City of Charleston*, (2 Peters, 449,) a municipal tax upon stock certificates for money obtained by loan, issued by the United States to individuals, and in their hands, was held to be unconstitutional, because it impeded the government in the exercise of its power to borrow money. In 1862, the same principle was reaffirmed and applied in *The Bank of Commerce v. The City of New York*, (2 Black, 620,) in respect to a tax of that city upon the capital of the State banks situated therein; the capital of each being largely invested, in some instances almost entirely, in United States bonds. Again, in the "Bank-tax case," (2 Wallace, 200,) it was decided that a tax of the State of New York on the banks there, "on a *valuation equal* to the amount of their capital stock paid in, or secured to be paid in," was a tax on their property, and that so far as it consisted of stocks of the federal government, the law laying the tax was void. And in *Farmer's National Bank v. Dearing*, (91 U. S. 29,) the Supreme Court say :

"The national banks organized under the act are instruments designed to be used to aid the government in the administration of an important branch of the public service. They are means appropriate to that end. Of the degree of the necessity which existed for creating them, Congress is the sole judge. Being such means, brought into existence for this purpose, and intended to be so employed, the States can exercise no control over them, nor in any wise affect their operation, except in so far as Congress may see proper to permit. . . . Against the national will, 'the States have no power, by taxation or otherwise, to retard, impede or burthen, or in any manner control the operation of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government.'"

Whatever evil, therefore, in the overthrow of State policies, especially in regard to usury, may be apprehended as possible from the unrestrained exercise of such power by the federal government, it appears to be very positively settled by the Supreme Court that a State has no independent authority of its own over the national banks within its borders, as they are now endowed, they being created and employed by Congress as instruments and agencies in the administration of public affairs; and that inasmuch as by taxing them directly, their efficiency and usefulness might be impaired, the several States have no power to lay any burden of this kind upon them, except so far as Congress has made them liable to such jurisdiction, or property belonging to them was previously subject thereto.

What that body has enacted, in this regard, is, that "all the *shares* in any association" may be "included in the valuation of the personal property of the owner or holder of such shares in asssesing taxes imposed by the authority of the State within which the association is located," and that "the legislature in any State may determine and direct the manner and place of taxing all *the shares*" subject to two restrictions not affecting this argument. And the act further makes it the duty of the president and cashier of every banking association to "cause to be kept, at all times, a full and correct list of *the names and residences of all the shareholders* in the association, and of the *number of shares* held by each, in the office where the business is transacted," and subject to the inspection of "the officers *authorized to assess taxes* under State authority—during business hours."

But the city of Mobile made the assessment now in question, not against any of the shareholders, but against the bank itself, upon all "complainant's shares in gross, composing its capital stock;" (see paragraph two of answer ;) or as the exhibits to the bill show, upon its "capital, $350,000."

And it is urged that inasmuch as the capital is composed of the shares, and the shareholders constitute the corporation, a tax upon the capital, or all the shares of the capital in gross, against the corporation itself, is in legal effect the same as a tax against the shareholders severally upon their respective shares. And it seems, indeed, as if there should be practically little difference between the two. Yet Congress, by providing that all the shares of the capital may be included in the valuation of the personal property of their owners or holders for State taxation, and by requiring to this end written or printed lists to be kept for inspection by the tax officers of the names, places of residence and number of shares of these shareholders, appears carefully to have avoided subjecting the banks themselves to State taxation of their capital.

The reasons for this, probably were—first, a desire to prevent any such interference with these instrumentalities for administration, as the old Bank of the United States encountered; and, secondly, views of the subject similar to those on which the decision in *Van Allen v. The Assessors* (3 Wal. 573) is founded. It is there held, that the capital of a national bank belongs to it only in its corporate capacity, not to the stockholders, and that as it consists largely, and often wholly, in United States bonds, by taxing the capital as such, these bonds would necessarily be taxed; which can not in any case be permitted. But the shares, it was further held, of the several shareholders, which the law declares may be included in the valuation of their personal property in the assessment of taxes imposed by or under State authority—although their value may be largely influenced by the new use which the banks were thereby authorized to make of the bonds—did not consist of the bonds    Said Mr. Justice Nelson, for a majority of the court: "The tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal, and within the powers conferred upon it by the charter and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own." "The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital," &c. "This is a distinct, independent interest or property, held by the shareholder like any other property that may belong to him. Now, it is this interest which the act of Congress has left subject to State taxation under the limitations prescribed."

And as a reason why this taxation should not be regarded

as a tax upon the bonds in which the capital of the bank
was invested, and why no deduction should be made on
account of them, the learned judge referred to the privileges
and powers conferred by the act—"founded upon a new use
and application of these government bonds—especially the
privilege of issuing notes to circulate in the community as
money, to the amount of *ninety per centum* of the bonds
deposited with the treasurer; thereby nearly doubling their
amount for all the operations and business purposes of the
banks." Wherefore, it was held that the tax was properly
authorized upon the shares, in respect of these new privileges,
and the advantage they conferred upon the shareholder in
the increased value he derived therefrom. It might also
have been added, that the capital of a bank is generally a
fixed sum which does not change; while the shares thereof,
in the hands of the shareholders, vary in value according to
the condition of its affairs; and the rule now generally
enforced by constitutional and legislative enactments, is,
that all taxes shall be in proportion to the value of the sub-
ject on account of which they are assessed. In *People v.
The Commissioners*, (4 Wallace, 244,) the views presented in
the above leading case, were reaffirmed; also in *Bradley v.
People*, Ib. 459, and in other cases since.

According, therefore, to the terms of the act of Congress
and the decisions of the Supreme Court of the United States,
the taxes brought into discussion in this cause were not
assessed in conformity with or by authority of law.

The defects, however, and errors were rather in the mode
of proceeding than in the matter of right. There is no
doubt that the shares of the stock in national banks may be
lawfully included in the valuation of the personal property
of the owners thereof, in assessing taxes imposed by author-
ity of the State, and are as such liable according to their
value, to the county and municipal, as well as to State taxes,
in the counties, cities and towns in which the banks are
respectively located, provided such taxes shall not be heavier
than those imposed upon other moneyed capital. Moreover,
the president and cashier of every such bank are required to
have made out and kept, at all times, in its office for the
transaction of business, a list of its shareholders, their places
of residence, and of the number of their shares respectively;
and it may be made the duty of every such bank to pay for
its stockholders the tax legally assessed against their respec-
tive shares, whether the stockholders reside in the State of
Alabama or not. Contestations upon these points have been
made time and again, sometimes by the banks and sometimes
by the shareholders, to avoid this liability. But it is estab-

lished by repeated adjudications, and ought to be considered definitively settled. See upon the subject, *Van Allen v. The Assessor, supra; People v. Commissioners, supra; National Bank v. Commonwealth,* 9 Wall. 353, (an interesting case); *Tappan v. Merchants' National Bank,* 19 Wall. 491; *People v. Commissioners of Assessment,* 94 U. S. 415; *Waite v. Dowley,* 94 U. S. 527; *Adams v. Nashville,* 95 U. S. 19; *McIver v. Robinson,* 53 Ala. 456.

It is insisted, however, on behalf of the city of Mobile, that even if the taxes in controversy are illegal, or illegally assessed, complainant's remedy is not in a court of equity by injunction. This is certainly in accordance with our decisions heretofore. The allegations of insolvency against a municipal corporation, which rarely has much property of its own subject to execution, have not the same force as they would have against an individual or private trading corporation. Bodies politic of this public character, established for the local government of communities, raise their revenues, as a State does, by taxation of the people and property within their jurisdiction. Obstructions to the exercise of this right and refusal to pay taxes, are often the chief cause of municipal embarrassments. The averments of the insolvency of the city can not be regarded as affording a sufficient reason why a Court of Chancery should take jurisdiction of a case of this nature, for which there were ample remedies at law, including especially proceedings by *certiorari.*

Let the decree of the Chancellor, therefore, be affirmed.

BRICKELL, C. J.—I concur in affirming the decree of the Chancellor, upon the ground that a court of equity has not jurisdiction to enjoin the collection of the tax. I do not concur in much that was said in reference to the taxation of the shares in national banks.