JAMES T. AUSTIN *vs.* BOARD OF ALDERMEN OF THE CITY OF BOSTON.

A state may tax shares held in national banks organized therein under U. S. St. of 1864, c. 106, and may authorize the assessment of such tax in the city or town, within the same state, where the owner resides.

PETITION for a writ of *certiorari* to the board of aldermen of the city of Boston. The facts set forth were in substance as follows:

The petitioner, a resident of Boston, duly handed in to the assessors of the city a list of his personal property, claimed to be liable to taxation. In this list were comprised the shares owned by him in seven banks, incorporated in Boston under the national banking act of the United States. When the list was handed in to the assessors, the petitioner protested that the shares in said banks were not legally liable to be taxed. The assessors nevertheless assessed the same. Thereupon the petitioner applied to the assessors for an abatement of so much of the assessment as was laid upon said shares. The application being rejected by the assessors, the petitioner applied in due form and time to the board of aldermen for a revision and reversal of the action of the assessors, and this application was rejected.

The defendants admitted the facts set forth in the petition and asserted that the tax referred to was legally assessed.

The case was reserved by *Wells*, J., for the determination of the full court.

*C. B. Goodrich & I. J. Austin*, for the petitioner. The proviso in U. S. St. of 1864, *c.* 106, § 41, is unconstitutional. National banking associations, organized under that statute, are means and instruments employed in the exercise of the functions of the federal government, and the right to tax such means and instruments is exclusively in congress. See *Mc Culloch* v. *Maryland*, 4 Wheat. 316 ; *Osborn* v. *Bank of United States*, 9 Wheat. 738; *Weston* v. *City Council of Charleston*, 2 Pet. 449 ; *People of New York* v. *Commissioners of Taxes*, 2 Black, 620 ; *Bank Tax Case*, 2 Wallace, 200. The *St.* of 1865, *c.* 242, § 3, does not conform to the requirements of that proviso. The proviso in the U. S. St. authorizes the shares to be included in the valuation only in the place where the bank is located ; but the statute of Massachusetts authorizes the shares to be included in the valuation in the place where the owner resides. The proviso in the act of congress is to be construed strictly, because it imposes a burden upon the citizen. *Freeland* v. *Hastings*, 10 Allen, 575. *Sewall* v. *Jones*, 9 Pick. 414. It contains a grant of power to the states, and therefore should be construed strictly against the grantees.

The word "place," as used in the proviso, means the specific city or town, and not the state, in which the bank is situated. Such is its signification in other parts of the same act; §§ 6, 7, 8, 23, 30, 34, 46. Dwarris on Sts. 574–576. Such is also its natural signification. *Opinion of Justices*, 7 Mass. 524. Other phrases in the same act confirm this ; §§ 10, 15, 18, 32. When a larger extent of territory is meant, the phraseology is changed ; §§ 9, 30, 40, 43, 57. The requirement is peremptory, and not merely directory. *Oliver* v. *Washington Mills*, 11 Allen, 278. *The King* v. *Justices of Leicester*, 7 B. & C. 12. Dwarris on Sts. 477, 610. It is no objection to this construction that this state, and perhaps other states, may lose the benefit of the U. S. statute. *The King* v. *Poor Law Commissioners*, 6 Ad. & El. 7

*Rex* v. *Stoke Damerel,* 7 B. & C. 569.   *Rex* v. *Ramsgate,* 6 B. & C. 712.   *Rex* v. *Great Bentley* 10 B. & C. 526–7.   *Green* v. *Wood,* 7 Q. B. 178.   *Samuel* v. *Nettleship,* 3 Q. B. 188.   This state may change its method of taxation.

*J. P. Healy & C. H. Hill,* for the respondents.

Hoar, J.   The petitioner, a resident of the city of Boston, having been assessed in that city upon his shares in several national banks there established, asks that a writ of *certiorari* may issue to vacate and set aside the assessment.   His petition is placed upon two grounds.

1. That a state has no constitutional authority to tax the shares in banks created by the government of the United States ; and

2. That if, under the proviso in the act of congress of 1864, the states have the right to tax the shares in the national banks to which that act relates, the tax is invalid because the law of Massachusetts does not conform to the proviso.

We have no difficulty, either on principle or authority, in coming to the conclusion that the first of these propositions cannot be supported.   " That the power of taxation," said Chief Justice Marshall, " is one of vital importance ; that it is retained by the states ; that it is not abridged by the grant of a similar power to the government of the Union ; that it is to be concurrently exercised by the two governments, are truths which have never been denied."   *McCulloch* v. *Maryland,* 4 Wheat. 425. The whole property of the citizens of a state is subject to the taxing power of the state ; but the state cannot tax an instrument employed by the government of the United States in the execution of its powers.   The states, therefore, cannot impose a tax upon the national banks.   But, as was said in *McCulloch* v. *Maryland,* this limitation " does not extend to a tax paid by the real property of the bank in common with the other real property within the state, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution in common with other property of the same description throughout the state."   4 Wheat. 436.   This remark was not essential to the decision of the case, and has only the force of a disclaimer of the intention to make a broader application of the doctrines on

which the decision rests, than was required by the judgment rendered. But in subsequent cases the distinction between a tax upon a bank, or the capital of a bank, established by congress, and a tax upon the shares of its stock owned by citizens of a state, has been fully recognized; and it has been held by the supreme court of the United States that the states have the right to tax the stock held by their citizens in the national banks, except so far as the act of congress has expressly or by implication restricted the exercise of the right.

In *Van Allen* v. *The Assessors*, 3 Wallace, 573, the judgment of the court was that the tax was invalid, because it was not levied in conformity with the stipulations of the act of congress of June 3, 1864, in that it imposed a higher rate of taxation than upon other moneyed capital. But in stating the reasons of the decision, the court say that, as such a tax "respects a subject matter over which congress and the states may exercise a concurrent power, but from the exercise of which congress, by reason of its paramount authority, may exclude the states, there is no doubt congress may withhold the exercise of that authority and leave the states free to act." The whole court concurred in the decision; the only division of opinion being upon the question whether the shares of the capital of national banks were subject to state taxation without any reference to the amount of such capital invested in bonds of the United States. In the subsequent case of *People* v. *The Commissioners*, 4 Wallace, 244, a state tax on the shares of national banks, which conformed in all respects to the limitations imposed by the act of congress, was held to be constitutional and valid. These two cases are decisive upon the first point, and, as they relate to the construction of the constitution and laws of the United States, are an authoritative exposition of the law which this court is required to follow.

It only remains, therefore, to consider and determine whether the tax imposed on the petitioner violates any of the requirements of the act of 1864.

The proviso upon which he relies is in the 41st section, and is in these words: " Provided that nothing in this act shall be

construed to prevent all the shares in any of the said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation, in the assessment of taxes imposed by or under state authority at the place where such bank is located, and not elsewhere, but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state." The statute under which the assessment of which he complains was made authorizes the shares to be included in the valuation of personal property wherever the owner resides within the state. *St.* 1865, *c.* 242, § 3.

It is not denied that the particular assessment upon the petitioner conforms literally to the terms of the proviso in every respect. He was assessed for his shares at the place where the banks were located, which is the place of his residence, and not at a greater rate than was assessed upon other moneyed capital. But it is argued on his behalf that the tax is to be assessed only at the place where the bank is located; that the tax assessed on other stockholders resident in other towns or cities in the Commonwealth is prohibited by the terms of the proviso; and that this either makes the whole mode of assessment illegal, because exceeding the limitation prescribed by the act of congress, or is in conflict with the constitution of the Commonwealth which requires equality of taxation.

We are by no means satisfied that the last reason is a sound one. If a statute of the Commonwealth provides for taxing a certain description of property, it would not follow that the tax is unequal, and therefore prohibited by the constitution, because some part of it might be exempt from taxation under the laws of the United States, or for any other reason. The statute would be simply inoperative upon the property exempted, and would be construed as not applying to it. An exemption in a tax act, applicable equally to all persons in a similar situation is usually not to be deemed a violation of that substantial equality in the distribution of public burdens which it is the design of the constitution to secure.

But without deciding that question, the court are all of opinion

that the true construction of the proviso does not confine the assessment of the tax to the place where the bank is located, and that it merely requires that the tax, to be valid, shall be imposed under the state authority existing at the place where it is thus located. The language of the act is not entirely perspicuous ; but this construction seems to be as consistent with it as any other, and is best adapted to effectuate what we think must have been the intention of congress.

We think the question whether the taxation of the shares which was allowed to the states should be imposed in the state where the bank was situated, or in that where the stockholders might reside, was that which it was designed to settle by the proviso. The result would appear to have been, that it was thought expedient that the taxation should be imposed in the state where the capital was actually invested and used, and not in the state where the stockholders might happen to reside. If the general authority to tax the shares had been given without restriction, the result might have been a double taxation of shares owned by persons not residing in the state where the bank was situated. It is evident from the whole terms of the proviso that congress did not contemplate a general tax by the state upon all the shares of the bank collectively, without reference to the jurisdiction which the state might have over the shareholder, because the mode of taxation which it authorizes is only by including the shares in the valuation of the personal property of the persons taxed.

The effect of the construction which we give is open to the objection that it relieves from the taxation of their shares the shareholders not residing in the state ; or at least that it may do so under our system of taxation. But on the other hand we can see no reason why congress, which was dealing with questions between the states and the nation, should have sought to make a distinction between shareholders living in the particular city, or town, or village, or ward, or county in which the bank is located, and other stockholders within the same state. Where the bank is located in a small place, such a distinction might exempt from taxation the larger portion of the shares. In the case of a county

tax, the whole assessment might be required by the state law to be made at a place where the bank was not located, even upon the shareholders residing at the place of its location. We therefore think that the reference in the proviso to " the place where the bank is located " was designed to define the state authority which was to be allowed to impose a tax, and not to limit the place of assessment. By this construction we avoid a question of great difficulty in regard to the constitutional power of congress to direct or regulate the mode of state taxation. Assuming that congress has the right to prohibit the taxation of the stock of an institution created by a law of the United States, as an instrument for the performance of functions belonging to the national government, it may follow that this prohibition may be absolute or conditional. The proviso that a tax shall not be imposed upon the stock in national banks " at a greater rate than is assessed upon other moneyed capital" is a security against hostile and discriminating taxation by the states which might affect the establishment or continuance of the banks. But it is a very serious question whether congress, having conceded to the states the right to tax the stock, either wholly, or with such limitations as are requisite to prevent partial or oppressive legislation against the banks, can proceed to prescribe the mode of taxation which the state shall adopt, or require the state to discriminate between its own citizens in the taxation of the same kind of property. We cannot suppose that this was the intention of congress.

The construction which we have given harmonizes with the phraseology of the 40th section of the act, where it is provided that the banks shall keep lists of the stockholders, with their places of residence and the number of shares held by each, " subject to the inspection . . . . of the officers authorized to assess taxes under state authority." The same construction has also been approved by the supreme court of Pennsylvania in the recent case of *Markoe* v. *Hartranft*, 6 Amer. Law Reg. (N. S.) 487.

We have been informed that a different interpretation of the proviso has been given by the justices of the supreme court of

Maine, in an opinion given to the legislature of that state; and by the supreme court of New Hampshire, in the case of the *First National Bank of Portsmouth* v. *Portsmouth*, which is not yet published. We regret that we have had no opportunity to see a statement of the reasons on which these eminent tribunals were led to this result, in which we have been unable to concur, but we are not surprised that the language of the act of congress should be found so ambiguous as to make its literal import uncertain, or capable of more than one construction. But, looking at the subject matter upon which the legislation in question is based, and remembering that congress were only called upon to consider the proper limitations of state authority in relation to the exercise of the functions of the national government, we cannot suppose that it was designed to interfere with or regulate the internal arrangements of the states upon a point so purely domestic as the place or manner of assessment of state taxes.

*Petition dismissed with costs.*