EXCHANGE NATIONAL BANK *v.* MILLER, County Treasurer, etc.·

(*Circuit Court, S. D. Ohio, W. D.*   February 7, 1884.)

1. TAXATION—NATIONAL BANK SHARES—INEQUALITIES IN VALUATION.
    Inequalities in the valuation of property for taxation, under the constitution and laws of a state requiring that all property shall be taxed upon its value by a uniform rule, afford no ground for relief, unless it be made to appear that such inequalities result not merely from error in judgment on the part of the assessing officer, but it must appear also that there was an intentional discrimination.    The same rule applies to the valuation of shares in national banks

¹ Reported by J. C. Harper, Esq., of the Cincinnati bar.

for taxation, where it appears that they were actually assessed at a greater rate than other moneyed capital in the hands of individual tax-payers of the state. Intentional discrimination may be established by proof of inequalities so gross as to lead the court to the conclusion that they were designed. But the facts do not warrant such conclusion in this case.

2. CORPORATIONS—SHARES ARE PROPERTY DISTINCT FROM THE PROPERTY OF THE CORPORATION.

Shares in the capital stock of corporations in Ohio are not necessarily to be treated or regarded as portions of the capital of the corporation. They are property of the shareholders, distinct and separate from the property of the corporation itself.

3. TAXATION OF NATIONAL BANK SHARES—TRUE MONEY VALUE.

Under the constitution and laws of this state, and also under the law of congress authorizing taxation on shares in national banks, they may be taxed at their true money value.

4. SAME—UNITED STATES BONDS AND OTHER NON-TAXABLE SECURITIES NOT DEDUCTED.

A statutory rule fixing such value, which does not permit a deduction therefrom for the amount of United States bonds or other non-taxable securities held by the bank, is not in conflict with the constitution of Ohio, nor with the law of congress authorizing taxation on such shares.

5. SAME—OHIO—SUCH NON-TAXABLE SECURITIES DEDUCTED FROM RETURNS OF INDIVIDUAL BANKERS, BUT NOT FROM THOSE OF NATIONAL BANKS.

The elimination from the returns made by unincorporated banks and individual bankers to the assessing officers, within the state of Ohio, of all United States bonds and other non-taxable securities held or owned by such bank or banker, is not a deduction nor a discrimination in favor of such bank or banker and against the holder and owner of shares in national banks, although such shares are valued for taxation without such deduction for the non-taxable securities held and owned by the bank.

6. SAME—"OTHER MONEYED CAPITAL" MEANS TAXABLE MONEYED CAPITAL.

"Other moneyed capital," in section 5219, Rev. St., refers to other *taxable* moneyed capital, and the valuation of shares in national banks for taxation is not, within the meaning of that section. at a greater rate than the assessment of other moneyed capital, unless such other moneyed capital be subject or liable to taxation.

In Chancery.

*Perry & Jenney, Stallo, Kittredge & Wilby,* and *Harrison & Olds,* for complainant.

*Foraker & Black* and *O. J. Cosgrove,* Co. Sol., for defendant.

Before BAXTER and SAGE, JJ.

SAGE, J. The tax from which the complainant prays to be relieved was assessed on the duplicate of 1882, under the following sections of the Revised Statutes of Ohio:

"Sec. 2765. The cashier of each incorporated bank shall make out and return to the auditor of the county in which it is located, between the first and second Monday of May, annually, a report in duplicate, under oath, exhibiting, in detail, and under appropriate heads. the resources and liabilities of such bank at the close of business on the Wednesday next preceding said second Monday, together with a full statement of the names and residences of the stockholders therein, with the number of shares held by each, and the par value of each share.

"Sec. 2766. Upon receiving such report, the auditor shall fix the total value of the shares of such bank according to their true value in money, and deduct from the aggregate sum so found the value of the real estate included in the statement of resources as the same stands on the duplicate; and when the bank is located in any city of the first or second class, he shall thereupon

make out and transmit to the city board of equalization, otherwise to the county board of equalization, a copy of the report so made by the cashier, together with the valuation of such shares as so fixed by the auditor."

The complainant contests the validity of the tax on the general ground that its shares are assessed at a higher rate than other moneyed capital in the hands of individual citizens, specifying (1) that the shares are valued too high, compared with other property on the tax duplicate; and (2) that the assets of the complainant consist, in part, of United States bonds, not subject to taxation, but included in the valuation made by the auditor and placed on the duplicate.

In support of the first objection the complainant has introduced testimony relating to a meeting of decennial assessors from all parts of the state, held at Columbus in 1880, preparatory to the appraising of real estate, at which meeting, according to the testimony of two witnesses, the conclusion or general understanding was that real estate should be assessed at two-thirds to three-fourths of its value, and that by that rate the assessment would represent the true cash value in money, taking into consideration "that real estate is almost always sold on long terms, and the losses occurring thereby." A third witness testifies that he was present, but that to the best of his recollection no rate was fully agreed upon. One witness states that the meeting was quite large, but how many assessors attended, or how many localities were represented, does not appear, nor does it appear that assessors were guided in their valuations by the action of the meeting, in opposition to their own judgment of the money value of the property by them appraised. There is testimony also that the object of the meeting was to make the assessments of real estate uniform. And whether two-thirds to three-fourths of what is spoken of by witnesses as the value of real estate sold upon pay-payments—part in cash and part on time—would be what is spoken of as its true cash value in money, does not appear. There is testimony tending to show great inequalities in the valuation for taxation of real and personal property, including shares in national banks, but in no instance does a witness testify that any assessor has been governed in making an assessment by any other rule than his judgment of the true money value of the property assessed.

It is contended for the complainant that this testimony brings the case within the rule of *Pelton* v. *Nat. Bank*, 101 U. S. 143, and *Cummings* v. *Nat. Bank*, 101 U. S. 153. That is not our view. In *Pelton* v. *Nat. Bank* it was held that the systematic and intentional valuation of all other moneyed capital by the taxing officers far below its full value, while shares of national banks were assessed at their full value, was a violation of the act of congress which prescribes the rule by which they were to be taxed by the state. In that case the court found that the valuation of national bank shares was intentionally higher than the valuation of other personal property, and

that this discrimination was neither an accident or a mistake, but a principle deliberately adopted in the valuation of all shares in national banks, and applied without exception, and therefore the decree below in favor of the complainant was affirmed. In *Cummings* v. *Nat. Bank*, the supreme court found that the assessors of real property, the assessors of personal property, and the auditor of Lucas county, Ohio, concurred in establishing a rule of valuation by which real and personal property, except money, was assessed at one-third, and money or invested capital at six-tenths, of its actual value, and that the assessments on shares of incorporated banks, as returned by the state board of equalization for taxation to the auditor of Lucas county, were fully equal to their selling price and to their true value in money, and the decree enjoining the collection of the excessive tax was affirmed.

No such state of facts is shown in the case now before this court. It is true, as shown by the testimony, that, although the shares of the complainant were valued for taxation at but 86.7+ per cent. of their true value in money, they were valued higher than other personal property, but the error or inequality is not shown to arise otherwise than from a mistake in judgment on the part of the assessing officials. It would, perhaps, be more exact to say that the judgment of the assessors, in their official valuation, differs from the judgment of witnesses in their unofficial valuation, as expressed in their testimony. The differences are no greater than frequently arise between witnesses in cases on trial on questions of value. And there is no certain standard by which the court can determine which is correct. Valuations, excepting of money and of standard marketable articles, are, at best, uncertain. The influences which affect salable values are various and often complicated. Much depends upon who is the owner or vendor, as well as upon who is the purchaser. The shrinkage in the value of estates result in many instances largely from the consideration that the salable value imparted by the fact of the ownership of the deceased is gone. A thousand influences, tangible and intangible, so affect the salable value of property, real and personal, in the city and in the country, as to make its true valuation a work of exceeding difficulty, and it is not to be wondered at, nor is it a circumstance of itself warranting an appeal to a court of chancery, that there are great inequalities in valuations for taxation. To correct these the state has provided for appeals to appropriate tribunals, whose duty it is to equalize valuations and the burden of taxation. When these are exhausted all that can be done, practically, is done, excepting in cases of intentional discrimination.

We are of opinion that the rule laid down in *Nat. Bank* v. *Kimball*, 103 U. S. 732, applies here. There it was held that no case for relief is made by averring that the assessments are unequal and partial, and that some other property is rated for taxable purposes at less than one-half of its cash value, unless it is further averred

that the officers appointed to make assessments combine together and establish a rule or principle of valuation, the necessary result of which is to tax one species of property higher than others, and higher than the average rate. It has been held, and, we think, correctly, that inequalities in valuation may be so great as to authorize the court to conclude that they are the result of intention, but we do not think that the testimony warrants such conclusion in this case.

To the same effect as *Nat. Bank* v. *Kimball* is *Wagoner* v. *Loomis*, 37 Ohio St. 571, where it was decided that inequalities in valuations, made under a valid law, of property for taxation, do not constitute grounds for enjoining the tax, in the absence of fraudulent discriminations by the agents and officers making such valuations, and that a petition for such injunction, which shows that the plaintiff's property was valued at only 80 per cent. of its true value in money, while other property in the county was valued at only 40 per cent. of its value, and avers that such valuations were unequal, unjust, and illegal, is insufficient.

2. Is the assessment invalid for the reason that the assets of the complainant consisted in part of United States bonds, not subject to taxation, but included in the valuation made by the auditor, and placed on the duplicate? The legislature, in providing for the taxation of shares in national banks, is subject to two classes of restrictions: *First*, those imposed by congress, and contained in section 5219, Rev. St.; and, *second*, those imposed by the constitution of the state of Ohio. If the act under which the assessment was made exceeds any of these restrictions it is invalid, at least to the extent of the excess. The valuation of shares in national banks, under sections 2765 and 2766, Rev. St. Ohio, quoted above, is fixed by deducting from the resources of the bank, its liabilities, and also the value of the real estate, included in the statement of resources, as the same stands on the duplicate. These are the only deductions.

It is urged on behalf of the complainant, that, by the constitution and statutes of Ohio, taxation is limited to tangible property, subject to ownership, and capable of definite money valuations, and that corporate franchises are not recognized as subjects of taxation. To these propositions, as stated, we agree, and, in our opinion, they are recognized by the legislature of Ohio in providing, by the law already referred to, for the taxation of shares in national banks. Nothing is taken into account, in the valuation of the shares for taxation, but the tangible property of the bank. From the sum of its resources is deducted the sum of its liabilities, and the assessed value of its real estate. The remainder is divided by the total number of shares, and the quotient is the amount which the law fixes as the taxable value of each share.

It is also urged that the taxable property of corporations in Ohio is taxed on valuation, like the property of individuals, and not otherwise, and that shares in any corporation are considered and treated as

"portions" of the taxable property of the corporation, and not otherwise, and are not required to be listed by the owner when the property of the corporation is listed. The constitution of Ohio declares that the property of corporations shall be subject to taxation the same as the property of individuals, (art. 13, § 4,) and the law (Rev. St. Ohio, § 2746) exempts from taxation the shares of the capital stock of any company, the capital stock of which is taxed in the name of such company. If the taxation of the property of the corporation be regarded as indirect taxation of the shares, it is, perhaps, true that the shares are considered and treated as "portions" of the taxable property of the corporation, but the direct and proper view is that the property of the corporation, in the case stated, is taxed, and the shares are exempt. In cases where the property of the corporation is not taxed we do not agree that the shares are considered and treated as "portions" of the taxable property of the corporation.

By section 2736 of the Revised Statutes of Ohio each person listing property is required to include in his statement all investments in bonds, stocks, joint-stock companies, etc., in his possession. Section 2737 provides that such statement shall truly and distinctly set forth the amount of all moneys invested in bonds, stocks, joint-stock companies, etc., and section 2739 provides that investments in bonds, stocks, and joint-stock companies shall be valued at the true value thereof in money. These sections prescribe the standard for the valuation of shares for taxation. It is their true value in money, and not the proportion which they bear to the taxable property of the corporation. If the property of the corporation is taxed, the shares are exempt. But congress does not authorize the property of national banks, excepting their real estate, to be taxed, and it cannot be taxed without authority from congress. It does permit the taxation of shares as the property of their owners or holders. And one of the points decided by the supreme court of Ohio, in *Frazer* v. *Siebern*, 16 Ohio St. 614, is that shares in national banks liable to taxation in the state of Ohio "are to be understood as the individual property or choses of the stockholders, as contradistinguished from aliquot parts of the capital and property of the bank, and as such may be taxed at their full value, without deduction for the franchise, or for real estate otherwise taxed, or for untaxable bonds owned by the bank." We do not see how language could be more explicit.

In *Bradley* v. *Bauder*, 36 Ohio St. 28, the question was whether a person residing in Ohio and owning shares of stock in a foreign corporation was required to list the same for taxation, notwithstanding the capital of the corporation was taxed in the state where the corporation was located. The argument was that capital of the corporation was invested in property taxed in the name of the corporation; that the shares only represented proportions of that property; and, therefore, that taxing the shares was, by another mode, taxing the property of the corporation. But Judge BOYNTON, pronouncing the opinion,

said: "This argument, however plausible, has never met with favor from the courts," and the legality of the tax upon the shares, as property, distinct and separate from the property of the corporation, and therefore not "portions" of the same—was affirmed.

In *Wagoner* v. *Loomis, supra*, Judge McIlvaine intimates, on page 580, that the officers of the law violated their sworn duty in placing the national bank shares of the plaintiff in error on the duplicate at their par value, "instead of their true value in money, (as the constitution requires,) which was 125 per cent. of their par value."

In each of these cases there is a clear recognition that the shares are entirely distinct, as taxable property, from the property of the corporation, and in *Frazer* v. *Siebern*, and in *Wagoner* v. *Loomis*, that intangible constituents of value—as the franchise—may be included in fixing the true money value of the shares for taxation. But by the law under which the shares of the complainant were valued for taxation everything intangible is excluded. The aggregate tax value of all the shares is equal to the net value of the capital of the bank, less the assessed value of its real estate. The non-taxable bonds owned by the bank are not excluded. How that affects the validity of the assessment is a question which we shall now consider.

Congress authorizes taxation upon the shares in national banks by the states within which they are located, under two restrictions: *First*, "that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individuals within such state;" and, *second*, "that the shares of any national banking association, owned by non-residents of any state, shall be taxed in the city or town where the bank is located, and not elsewhere. The real estate of the bank is also taxable as other real estate. Rev. St. § 5219. By section 2759, Rev. St. Ohio, the county auditor is required to allow to every individual banker, and to every unincorporated bank, in addition to the credits allowed in the valuation for taxation of national bank shares, "the average amount of United States government, and other securities that are exempt from taxation," held by such banker or unincorporated bank. Wherefore, it is argued that the taxation upon the national bank shares is in violation of the first restriction imposed by congress, in that it is "at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens." No complete definition of other "moneyed capital" has been given. It must, however, be held to mean other taxable moneyed capital. Otherwise, the law of congress, permitting taxation of the shares, would defeat itself, for they could not be taxed at a greater rate than individual investments in United States bonds, which are exempt. Unincorporated banks and individual bankers can be taxed only upon their property. The statement they are required to make and return to the auditor shall, the law says, set forth not only their taxable property, but also United States bonds and other non-taxable securities held by them. The auditor is required

to deduct from the statement so made and returned that which the state has no power to tax. The statute creates no exemption. It lays hold upon every item of property which it can reach, and taxes every item which it can tax, allowing only the credits allowed to other individual tax-payers. The auditor, accordingly, in fixing the amount for taxation, deducts from the statement, which the law compels the unincorporated bank and the individual banker to make, the securities which the state could not tax if it would. If it were material to inquire why the law requires that non-taxable securities shall be included in the return, the answer might be suggested by sections 139 and 1522 of the Revised Statutes of Ohio, relating to the statistical duties of the secretary of state and of assessors. Every tax-payer is required, at the time of listing his property, to make to the assessor a verified statement, which shall include, among other things, "the amount of United States bonds owned, the amount of legal tender notes or money exempt from taxation, and the amount of state bonds or certificates." As the unincorporated bank and the individual banker make their returns to the auditor, it is provided that those returns shall contain the items which the assessor, in the discharge of his statistical duties, is required to take from every individual tax-payer.

Unless the taxation on the shares in national banks is indirectly a tax on the property of the bank, there is no discrimination in favor of the individual banker and the unincorporated bank. But in *Van Allen* v. *The Assessors*, 3 Wall. 573, the supreme court of the United States decided that "the tax on the shares is not a tax on the capital of the bank." They state, as familiar law, that "the corporation is the legal owner of all the property of the bank, real and personal," and that the interest of the shareholder is "a distinct, independent interest or property, held by the shareholder like any other property that may belong to him," and that "it is this interest which the act of congress has left subject to taxation by the states." Chief Justice Chase, for himself, and Associate Justices Wayne and Swayne, in a dissenting opinion, argued with great power that taxation on shares in national banks, without reference to the amount of their capital invested in bonds of the United States, was "actual, though indirect, taxation of the bonds," but the holding by the majority of the court was affirmed in *People* v. *Com'rs*, 4 Wall. 244, and has since remained as settled law, so that the dissenting opinion of the chief justice only strengthens the authority of *Van Allen* v. *The Assessors*. In *People* v. *Com'rs*, the only question before the court was whether the holder of the bank shares was entitled to deduct from their value a due proportion of the sum which the bank had invested in government bonds. This was decided in the negative. Mr. Justice Nelson, who pronounced the opinion of the court, said that "the meaning and intent of the law-makers was that the rate of the taxation of the shares should be the same, or not greater, than upon the moneyed

capital of the individual citizen which is subject or liable to taxation. Eliminating from the return made by the unincorporated bank or individual banker, every item of property and of moneyed capital exempt from taxation, is not deducting, nor is it discriminating in favor of such bank or banker and against the holder or owner of shares in a national bank. What is such discrimination is clearly shown in *People* v. *Weaver*, 100 U. S. 539. That case was taken to the supreme court of the United States from the court of appeals of New York. Mr. Justice MILLER, delivering the opinion, said:

"It cannot be disputed,—it is not disputed here,—nor is it denied in the opinion of the state court, that the effect of the state law is to permit a citizen of New York, who has money capital invested otherwise than in banks, to deduct from that capital the sum of all his debts, leaving the remainder alone subject to taxation; while he whose money is invested in shares of bank stocks can make no such deduction. Nor, inasmuch as nearly all the banks in that state, and in all others, are national banks, can it be denied that the owner of such shares who owes debts is subjected to a heavier tax on account of those shares than the owner of moneyed capital otherwise invested who also is in debt, because the latter can diminish the amount of his tax by the amount of his indebtedness, while the former cannot."

In accordance with this view, the judgment of the state court was reversed. It was within the power of the legislature of New York to allow or to disallow a deduction from the listed value of the property of the tax-payer equal to the amount of his indebtedness; and to allow it to one and to refuse it to another was, by intentional discrimination, to make the taxation unequal. But in the case of an unincorporated bank, or of an individual banker in Ohio, the state levies its taxes upon every dollar's worth of property which it has power to tax, at the same rate and by the same method as in the taxation on national bank shares, leaving untouched only the property which it has not power to tax.

It is claimed that upon a proper application of the decision in *Frazer* v. *Siebern, supra,* the assessment must be held illegal. We do not so think. The act of congress then in force, authorizing taxation upon shares in national banks, contained the following restriction not to be found in the present law: "That the tax so imposed under the laws of any state, upon the shares of any of the associations authorized by this act, shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the state where such association is located." The state of Ohio imposed no tax upon shares in the state banks, which were then in existence. On the contrary, by the fifty-ninth section of the act of 1861, then in force, they were expressly exempted. But the state banks themselves were taxed upon their capital, subject to a deduction for the value of their real estate, and of their non-taxable bonds of the United States, while the tax on shares in national banks was upon their nominal or par value without any deduction for real estate, which was taxed separately against the banks as real estate, and

without deduction for United States bonds owned by the banks. The court, recognizing that the equivalent taxation necessary to justify a tax upon shares in national banks might be either upon the shares in the state banks and assessed against the shareholders, or upon the capital of the bank and assessed against the bank itself, provided only that it be equivalent, held that "the tax against the owners of shares in the national banks must not exceed that imposed, in some form, upon the state banks or their stockholders." And, finding that the tax upon the shares in the national banks was in excess of that assessed against the state banks, the court enjoined the collection of the excess.

As we have already found that the limitation in the present act of congress is, in effect, that the taxation on the shares shall not be at a greater rate than is assessed upon other taxable moneyed capital, it follows that the failure to levy a tax against a citizen of the state, whether a banker, a manufacturer, a merchant, or a capitalist, upon property or investments which the state has no power to tax, does not make out a case of discrimination against the owner or holder of shares in a national bank.

Our conclusion is that the bill must be dismissed, and it is so ordered.

---

POWER OF STATES TO TAX. National banks, as such, being instrumentalities of the government, are not liable to taxation by the states.[1] Such banks derive their authority to do business in the states by virtue of a United States statute, which is supreme law.[2] Their franchise is not liable to state taxation, nor can the state authorize its municipalities to exact from them license taxes for doing business within their limits.[3] A city cannot tax the business of a bank which might be the fiscal agent of the federal government, although it may tax its property and the shares of its stockholders.[4] Congress may permit states to tax national banks,[5] and its shares held by individuals,[6] and this although its capital may be invested in bonds or other securities of the United States;[7] but the permission of congress is a prerequisite to such authority.[8] A state can impose only such a tax on national banking corporations as is authorized by the act of congress creating them, and that act only authorizes

[1] McCulloch v. Maryland, 4 Wheat. 316; Osborn v. Bank of U. S. 9 Wheat. 738; Bank of Commerce v. New York, 2 Black, 620; Bank Tax Cases, 2 Wall. 200; Pittsburg v. Nat. Bank, 55 Pa. St. 45; Collins v. Chicago, 4 Biss. 472.

[2] Carthage v. First Nat. Bank of Carthage, 71 Mo. 509; Van Allen v. Assessors, 3 Wall. 573; Bradley v. People, 4 Wall. 459; Lionberger v. Rouse, 9 Wall. 468; Tappan v. Nat. Bank, 19 Wall. 490; Hepburn v School Directors, 23 Wall. 480; Second Nat. Bank v. Caldwell, 13 Fed. Rep. 429.

[3] Carthage v. First Nat. Bank of Carthage, 71 Mo. 509; Nat Bank v. Mayor, etc , 8 Heisk. 814.

[4] Johnston v. Macon, 62 Ga. 650; Macon v. First Nat. Bank, 59 Ga. 648; Macon v. Macon Sav. Bank 60 Ga. 133.

[5] Van Allen v Assessors, 3 Wall. 573; 33 N. Y. 161; Frazer v. Seibern, 16 Ohio St. 614; Mintzer

v. Montgomery Co. 54 Pa. St. 139; Austin v. Boston, 96 Mass. 359; City of Utica v. Churchill, 43 Barb. 550; People v. Com'rs, 4 Wall. 244; Nat. Bank v. Com. 9 Wall. 353; First Nat. Bank v. Douglas Co. 3 Dill. 298, 330; Wright v. Stiltz, 27 Ind. 338; Hubbard v. Sup'rs, 23 Iowa, 130.

[6] Nat. Bank v. Com'rs, 9 Wall. 353; People v. Bradley, 39 Ill. 130; St. Louis Nat. Bank v. Papin, 4 Dill. 29; Goddard v. Bulow, 1 Nott & McC. 45; Stetson v. Bangor, 56 Me. 274; State v. Haight, 31 N. J. 399; State v. Hart, Id. 434.

[7] People v. Com'rs, 4 Wall. 259; Wright v. Stiltz, 27 Ind. 238; St. Louis B. & S. Ass'n v. Lightner, 47 Mo. 393. Contra, Whitney v. Madison, 23 Ind. 331.

[8] People v. Weaver, 100 U. S. 543; McCulloch v. Maryland, 4 Wheat. 316; Osborn v. Bank of U. S. 9 Wheat. 733; Weston v. Charleston, 2 Pet 449; People v. Assessors, 44 Barb. 148.

a tax on the shares in such banks, and not on its capital stock.[1] States have the power to tax national banks only at a rate, in the manner, and on the particular conditions authorized by congress;[2] and the requirements of the act must be obeyed in good faith, and the state tax must be construed in connection with the act.[3] The permission given by the national banking act to tax national banks, removes any implied exemption that might otherwise exist.[4]

REAL ESTATE. The state may tax the real estate and the shares of national banks.[5] Under the Revised Statutes the state is left free to exercise the power of taxation over national banks, assessing the same upon the real property of the bank, or upon the shares of its capital stock, at the election of the state, in accordance with the requirements of the state constitution and laws, and only in conformity with the rules applicable to citizens and corporations of the state.[6] Real estate is taxable by state authority, and the separate shares of its capital stock, as the personal property of the holders of such shares, may be taxed by the state or its municipal corporations, so long as the tax is not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state.[7] Real estate owned by a national bank should be assessed as realty in the township where it is situated, and not as a part of the capital stock of the bank.[8] The banking office and lot lawfully owned and occupied as its place of business by a national bank is not liable to assessment and taxation as real estate *eo nomine* against the bank.[9]

CAPITAL NOT TAXABLE. The capital of a national bank is not taxable by the state.[10] Capital stock as such cannot be assessed. The only way stock can be reached is by assessment of the different shares of stockholders,[11] and an assessment on the shares in gross against the bank is not authorized and is illegal.[12] A bank is not liable to taxation on its capital under a statute which requires owners of property to return it for taxation. It does not own the shares held by individuals,[13] but it is the owner of all the property of the corporation, real and personal;[14] but it is not liable for either state or municipal taxes on the shares of stock not owned by it, but owned by individual stockholders.[15] If the shares of a national bank, when in the hands of a receiver, have any value, they are taxable in the hands of the holders or owners; but the property held by the receiver is exempt to the same extent that it was before his appointment.[16] Such property cannot be subjected to sale for the payment of the demand of a creditor against the claim for the property by a receiver of the bank subsequently appointed.[17] The taxation by a state of the capital stock

[1] Carthage v. First Nat. Bank, 71 Mo. 509; Van Allen v. Assessors, 3 Wall. 573; Bradley v. People, 4 Wall. 459; Lionberger v. Rouse, 9 Wall. 468; Tappan v. Nat. Bank. 19 Wall. 490; Hepburn v. School Directors, 23 Wall. 480.

[2] Sumter Co. v. Nat. Bank, 62 Ala. 464; Nat. Commercial Bank v. Mobile, Id. 284.

[3] First Nat. Bank v. St. Joseph, 46 Mich. 526; S. C. 9 N. W. Rep. 833.

[4] Union Nat. Bank v. Chicago, 3 Biss. 82.

[5] Nat. Commercial Bank v. Mobile, 62 Ala. 284; Salt Lake City Bank v. Golding, 2 Utah, 1; Sumter Co. v. Gainesville Bank, 62 Ala. 464; First Nat. Bank v. Douglas Co. 3 Dill. 330.

[6] Nat. Commercial Bank v. Mobile, 62 Ala. 284.

[7] Loftin v. Citizens' Nat. Bank, 85 Ind. 341.

[8] Rice Co. Com'rs v. Citizens' Nat Bank, 23 Minn. 281.

[9] Second Nat. Bank v. Caldwell, 13 Fed. Rep. 430; Lackawanna Co. v. First Nat. Bank, 94 Pa.

St. 221; People v Com'rs of Taxes, 80 N. Y. 573; and cases.

[10] Nat. Commercial Bank v. Mobile, 62 Ala. 295; People v. Com'rs, 4 Wall. 244; Bradley v. People, Id. 459; Salt Lake City Bank v. Golding, 2 Utah, 1; Sumter Co. v. Gainesville Bank, 62 Ala. 464; First Nat. Bank v. Douglas Co. 3 Dill. 330.

[11] Collins v. Chicago, 4 Biss. 472.

[12] Nat. Commercial Bank v. Mobile, 62 Ala. 284.

[13] Waco Bank v. Rogers, 51 Tex. 606; North Ward Bank v. Newark, 40 N. J. Law, 558; Waite v. Dowley, 94 U. S. 527; Sumter Co. v. Gainesville Bank, 62 Ala. 468; Van Allen v. Assessors, 3 Wall. 584.

[14] Van Allen v. Assessors, 3 Wall. 584: Sumter Co. v. Gainesville Bank, 62 Ala. 468.

[15] Waco Bank v. Rogers, 51 Tex. 606.

[16] Rosenblatt v. Johnston, 104 U. S. 463.

[17] Woodward v. Ellsworth, 4 Colo. 583; Nat. Bank v. Colby, 21 Wall. 609.

of a national bank invested in United States securities will be restrained,[1] but injunction will not lie to restrain the collection of a tax illegally assessed by the municipal authorities upon the shares of a national bank in gross, instead of against the individual shareholders, though such municipal corporation be insolvent, as there are ample remedies at law.[2]

SHARES OF STOCK SUBJECT TO TAXATION. Shares of national bank stock are subject to taxation by the state[3] against the shareholders.[4] They may be taxed at the place where the bank is situated.[5] They are exceptions to the rule that personal property follows the owner, for they are by law made taxable at the *situs* of the bank.[6] The state in which the national bank is situated has the exclusive right to derive revenue from the shares of such bank, no matter where the shareholders may be domiciled.[7] A state may authorize the assessment in the city or town within the same state where the owner resides,[8] the stockholder having the right to be assessed at his domicile within the state in which the bank is located.[9] The mode by which the tax shall be assessed and collected, and the place where it shall be laid on resident stockholders, is left to the discretion of the legislature of the state in which the bank is located.[10] Under the general state statutes the stock belonging to an inhabitant of a school-district in a town other than that in which the bank is situated, cannot be taxed for the purpose of defraying the expense of building a school-house in the district.[11] Where the legislature declared that the tax on the shares of non-resident stockholders shall be assessed against and paid by the bank, if this were in fact unjust to the resident stockholders the remedy for the injustice would be with the legislature.[12] The fact that a national bank in one state keeps a clerk in another state authorized to receive deposits, does not render the bank taxable to the latter state.[13] States may tax dividends declared to holders of national bank stock;[14] but the consent of the comptroller of the treasury being necessary for an increase of shares of the stock, new shares issued under a vote of the corporation are not assessable until the certificate of the comptroller of his approval shall be issued.[15]

RATE. The only restrictions imposed by the act of congress on the power of the states to tax national bank shares is that it shall not be at a greater rate than is assessed on "other moneyed capital" in the hands of individual citizens of the state, and that shares owned by non-residents shall be taxed in the city or town where the bank is located.[16] "Other moneyed capital" means money capital invested otherwise than in national banks.[17] This restriction only requires that the amount of tax imposed and the system of assessment applied to shares of the stock shall be substantially the same as are

[1] First Nat. Bank v. Douglas Co. 3 Dill. 298.
[2] Nat. Commercial Bank v. Mobile. 62 Ala. 284.
[3] Howell v. Cassopolis, 35 Mich. 471; Kyle v. Fayetteville, 75 N. C. 445; Buie v. Fayetteville, 79 N. C. 267; North Ward Nat. Bank v. Newark, 39 N. J. Law, 380; Nat. Bank v. Com. 9 Wall. 353; Lionberger v. Rouse, 1d. 468; Austin v. Boston. 11 Allen, 359.
[4] Sumter Co v. Gainesville Bank, 62 Ala. 464.
[5] First Nat. Bank v. Smith, 65 Ill. 44; Baker v. First Nat. Bank, 67 Ill. 297.
[6] Tappan v. Merch. Nat. Bank, 19 Wall. 490; Baker v. First Nat. Bank, 67 Ill. 297; Prov. Inst. v. Boston, 101 Mass 575; McLaughlin v. Chadwell, 7 Heisk. 389. See 15 St. at Large, 34.
[7] Sumter Co. v. Nat. Bank of Gainesville, 62 Ala. 469, Nat. Bank v. Com'rs. 9 Wall. 355.
[8] Austin v. Boston, 14 Allen, 359.
[9] North Ward Nat. Bank v. Newark, 40 N. J. Law. 558; North Ward Nat. Bank v. Newark, 39 N. J. Law, 380; Howell v. Cassopolis, 35 Mich. 471: Kyle v. Fayetteville, 75 N. C. 445; Buie v. Same. 79 N. C. 267.
[10] North Ward Nat. Bank v. Newark, 39 N. J. Law, 380.
[11] Little v. Little, 131 Mass. 367.
[12] North Ward Nat. Bank v. Newark, 40 N. J. Law, 562; State v. Branin, 38 N. J. Law, 494.
[13] Nat. State Bank v. Pierce, 18 Alb. Law J. 16.
[14] State v. Collector, 2 Bailey, 654.
[15] Charleston v. People's Nat. Bank, 5 S. C. 103.
[16] Lionberger v. Rouse, 9 Wall. 475; Pollard v. State, 65 Ala. 628; Miller v. Heilbron, 58 Cal. 133; North Ward Nat. Bank v. Newark, 39 N. J. Law, 380; Ruggles v. Fond du Lac, 53 Wis. 439.
[17] Miller v. Heilbron, 58 Cal. 133; People v. Weaver, 100 U. S. 543.

imposed and applied to other moneyed capital.[1]    Where different rates of taxation are imposed upon different classes of moneyed capital the rate of taxation on national bank shares should not exceed the rate imposed on shares in state banks.[2]    In the taxation of national bank shares it must appear that the assessors acted under some agreement or rule which necessarily tended to tax such shares at a greater rate than is assessed on other moneyed capital, to render the assessment void.[3]    If the amount assessed on them is governed by the same percentage on the valuation as that applied to other moneyed capital, the act of congress is satisfied.[4]    Any system of assessment of taxes which exacts from the owner of the shares a larger sum in proportion to their actual value than it does from the owner of other moneyed capital valued in like manner, taxes them at a greater rate within the meaning of the act of congress.[5]

VALUATION.    The actual and not the par value is the standard of taxation of national bank shares,[6] and such valuation is not affected by the fact that a portion of the capital of the bank is invested in United States bonds;[7] and the surplus fund which a national bank is required to reserve from its net profits is not excluded in the valuation of its shares for taxation.[8]    Under certain limitations, the shares of the national banks are taxable, with exclusive reference to their value, and without regard to the nature of the property held by the bank as a corporation.[9]    They may be lawfully included in the valuation of the personal property of the owners thereof in assessing state taxes.[10]    The provision of the act of congress has reference to the entire process of assessment, and includes the valuation of the shares, as well as the rate of percentage charged thereon.[11]    Shares in national banks may be valued *above* their par value.[12]    The actual value of the stock diminished by the proportionate value of the real estate owned by the bank, furnishes the proper sum upon which to assess the tax.[13]    The state cannot evade the restriction contained in the act of congress, by requiring the value of the property to be added to the value of the shares.[14]    Where the value of the real estate held by the bank was not deducted, the shares are subjected to double taxation, and the tax was invalid.[15]

REDUCTION FROM VALUATION.    Where other moneyed corporation was taxed, but a reduction to the whole amount of the owner's indebtedness was to be made before assessment, and no such deduction was allowed to the holders of national bank stock, the tax upon such shares is invalid.[16]    Under a statute making taxable all credits in excess of the debts of the person taxed, it is not necessarily in conflict with the act of congress providing that national bank stock shall not be taxed at a greater rate than other moneyed capital, even though the latter are taxed for their full value, without deduct-

1 Pollard v. State, 65 Ala. 628.

2 City Nat. Bank v. Paducah, 2 Flippin, 61.

3 First Nat. Bank v. Farwell, 7 Fed. Rep. 518; S. C. 10 Biss. 270.

4 Pelton v. Nat. Bank, 101 U. S. 145; People v. Weaver, 100 U. S. 539

5 Poll ird v. State, 65 Ala. 632; Pelton v. Nat. Bank, 101 U. S. 145.

6 People v. Com'rs, 94 U. S. 415; S. C. 67 N. Y. 516; Van Allen v. Assessors, 3 Wall. 573; People v. Com'rs of Taxes, 8 Hun, 556.

7 Id.

8 Stafford Nat. Bank v. Dover, 58 N. H. 316; First Nat. Bank v. Peterborough, 56 N. H. 38; Nat. Bank v. Com'rs, 9 Wall, 353; People v. Com'rs, 67 N. Y. 516; S. C. 94 U. S 415

9 Evansville Nat. Bank v. Britton, 105 U. S. 325; Van Allen v. Assessors, 3 Wall. 573.

10 Van Allen v. Assessors, 3 Wall. 573; People v. Com'rs, 4 Wall. 244; Nat. Bank v. Com. 9 Wall. 353; Tappan v. Merch. Nat. Bank, 19 Wall. 491; People v. Com'rs, 94 U. S. 415; Waite v. Dowley, 94 U. S. 527; Adams v. Nashville, 95 U. S. 19; McIver v. Robinson, 53 Ala. 456; Nat. Commercial Bank v. Mobile, 62 Ala. 295.

11 People v. Weaver, 100 U. S. 539.

12 Pelton v. Nat. Bank, 101 U. S. 143.

13 People v. Weaver, 100 U. S. 539; Sup'rs of Albany v. Stanley, 105 U. S. 305; S. C. 12 Fed. Rep. 87. See People v. Dolan, 36 N. Y. 59; Nat. Alb. Exch. Bank v. Hills, 5 Fed. Rep. 251.

14 Pelton v. Nat. Bank, 101 U. S. 143.

15 Nat. Bank v. Kimball, 103 U. S. 732.

16 City Nat. Bank v. Paducah, 2 Flippin, 61.

ing indebtedness.[1] The provisions which authorize the tax-payer to deduct his indebtedness from the amount of money loaned and solvent credits, taxing only the excess, and exempts from taxation of the capital stock of incorporated companies created under any law of the state such portion thereof as may be invested in property, and taxed otherwise as property, and limits municipal taxation upon such corporations, in their operation upon moneyed capital discriminate unfavorably against shareholders in national banks, and are to that extent violative of the act of congress.[2] Shareholders are not entitled to any allowance for such of the capital and surplus of the bank as may be invested in government bonds;[3] as a state statute taxing bank stock must levy the tax on the shares of stockholders, as distinguished from the capital of the bank invested in federal securities.[4] Congress may subject the shares of national bank stock to state taxation, notwithstanding the capital is invested in national securities.[5] The shares of stock are property, separate and distinct from the property of the corporation which they represent.[6]

DEDUCTION OF INDEBTEDNESS. Any statute is in conflict with the restrictive clause of the act of congress in so far as it does not permit a stockholder to deduct the amount of his just indebtedness from the assessed value of his stock, while the owners of all other taxable personal property may deduct debts from the value of their property.[7] When the shareholder has no debts to deduct, the law provides a mode of assessment ror him which is not in conflict with the act of congress; the law in that case can be held valid,[8] and he cannot recover back the tax paid pursuant thereto. If he has debts, the assessment excluding them from computation is voidable, but the assessing officers act within their authority until they are duly notified that he is entitled to deduction of such debts,[9] and notice of debts must be given to the assessor.[10] If the assessing officer proceeds after such notice and acts in violation of the act of congress, the tax-payer may take the requisite steps to secure the deduction, and when secured the residue of the state statute remains valid.[11] Where, under the statute, the stockholder has presented to the proper board of assessors his affidavit showing that his personal property subject to taxation, including such shares, after deducting therefrom his just debts, is of no value, and they refuse, on his demand, to reduce his assessment of the shares, an injunction should be awarded to restrain the collection of the tax.[12] In the absence of evidence that the debt claimed for deduction was not a just one and enforceable against the party taxed, he is entitled to have it deducted, and this, although the transaction creating the debt was a "device to escape assessment and taxation;" so held, in a case where the debt was created in the purchase of non-taxable securities.[13] Where the assess-

[1] First Nat. Bank v. St. Joseph, 46 Mich. 526; S. C. 9 N. W. Rep. 833.

[2] Pollard v. State, 65 Ala. 628.

[3] First Nat. Bank v. Farwell, 7 Fed. Rep. 518.

[4] Nat. Bank v. Com'rs, 9 Wall. 353.

[5] McCulloch v. Maryland, 4 Wheat. 316; Weston v. Charleston, 2 Pet. 449; Collector v. Day. 11 Wall. 123; Ward v. Marylan l, 12 Wall. 427; Van Allen v. Assessors, 3 Wall. 593.

[6] Kirtland v. Hotchkiss, 42 Conn. 438; Van Allen v. Assessors, 3 Wall. 573; Bradley v. People, 4 Wall. 459; Nat. Bank v. Com'rs, 9 Wall. 353.

[7] Sup'rs of Albany v. Stanley, 105 U. S. 305; Hills v. Nat. Exch. Bank, Id. 319; Evansville Bank v. Britton, Id. 322; S. C. 10 Biss. 503; 12 Fed. Rep. 96; Railroad Tax Cases, 13 Fed. Rep. 737; People v. Weaver, 100 U. S. 539, reversing S. C.: Williams v. Weaver, 75 N. Y. 30; and see Cummings v. Nat. Bank, 101 U. S. 153; Ruggles v. Fond du Lac, 10 N. W. Rep 566.

[8] Sup'rs of Albany v. Stanley, 12 Fed. Rep. 90; Austin v. Boston, 14 Allen, 357, to the same effect; People v. Bull, 46 N. Y 57; Gordon v. Cornes, 47 N. Y. 608; Village of Middleton, Ex parte, 82 N. Y. 196.

[9] Sup'rs of Albany v. Stanley, 105 U. S. 305; Hills v. Nat. Exch. Bank, Id. 319; Evansville Bank v. Britton, Id. 322; S. C. 10 Biss. 503; 12 Fed. Rep. 96.

[10] Sup'rs of Albany v. Stanley, 105 U. S. 305; S C. 12 Fed. Rep. 1.

[11] Sup'rs of Albany v. Stanley, 105 U. S 305; Hills v. Nat. Exch. Bank, 105 U. S 319; Evansville Bank v. Britton, 105 U. S. 322; S. C. 10 Biss. 508; 12 Fed. Rep. 96.

[12] Hills v Nat. Exch. Bank, 105 U. S. 319; Evansville Bank v. Britton, Id. 322; S. C. 10 Biss. 503; 12 Fed. Rep. 96

[13] People v. Ryan, 88 N. Y. 142.

ment is not void, but only voidable, it must stand good for the assessment in each case which is not shown to be in excess of the just debts of the shareholder that should be deducted.[1]

EQUALITY AND UNIFORMITY.   The restrictions on the power of the state to tax national bank shares is intended to secure equality of valuation in their assessment, as well as equality in the rate of the tax after the assessment has been made.[2]   The rule that they should not be assessed higher than other moneyed capital is not violated by taxing them without deduction of mortgages, judgments, and other securities for money loaned, although some capital is subject to such exemption from taxation for other than state purposes;[3] so exempting from taxation money invested in state bonds, or city bonds, is not an unfriendly discrimination.[4]   The act of congress is not infringed by a state law which provides that all personal property, including money and all debts owing by solvent debtors, and shares in national and state banks, and other corporations, shall be assessed at their true value and taxed at an equal rate, even if it also provides that certain classes of property, including shares in certain classes of corporations, shall be exempt from taxation.[5]   The discrimination must be " with moneyed capital in the hands of individual citizens;" a discrimination between shareholders in corporations, other than banks, is not within the prohibition.[6]   The rule or principle of unequal valuation of different classes of property, adopted by local boards of assessors, is in conflict with the constitution and works injustice to owners of bank shares;[7] so to tax the shares in a national bank at their full value, while other property is assessed at 30 or 40 per cent. of its value, is unjust and unlawful, and the bank may maintain an action to restrain the collection of such tax;[8] the court will not restrain the collection where the shares are taxable and no excessive valuation is complained of, although the officers arrived at correct result by an erroneous method.[9]   Although for purposes of taxation the statutes provide for the valuation of all moneyed capital, including shares of national banks, at its true cash value, the systematic and intentional valuation of all other moneyed capital by the taxing officers far below its true value, while the shares are assessed at their true value, is a violation of the act of congress, which prescribes the rule by which they shall be taxed by state authority;[10] and the statute which establishes a mode of assessments by which shares are valued higher in proportion to their real value than other moneyed capital, is in conflict, although no greater percentage is levied than on that of other moneyed capital.[11]   In such case, on the payment or the tender of the sum which such shares ought to pay, under the rule established by that act, a court of equity will enjoin the state authorities from collecting the remainder;[12] but where they are taxed at the same rate as other property, and the valuation of these shares is at half their actual value, while that of some other property is at less than half its value, a discrimination is not thereby shown.[13]   The validity of a municipal tax on the shares of a national bank is not impaired by the fact that the money paid for such stock may have been taxed for municipal purposes to the same person.[14]

DISCRIMINATION.   A state law is not violative of the act of congress merely on the ground that it allowed a "partial exemption" of a certain kind of moneyed capital, which was designed to prevent a double burden of taxation,

1 Hills v. Nat. Exch. Bank, 12 Fed. Rep. 95.

2 Albany City Nat. Bank v. Maher, 6 Fed Rep. 417.

3 Gorgas' Appeal, 79 Pa. St 149.

4 Pollard v. State, 65 Ala. 628; Adams v. Nashville, 95 U. S. 19.

5 Stratton v. Collins, 43 N. J. Law, 563.

6 First Nat. Bank v. Waters, 7 Fed. Rep. 152.

7 Cummings v. Nat. Bank, 101 U. S. 153.

8 Id.

9 St. Louis Nat. Bank v. Papin, 4 Dill. 29.

10 Second Nat. Bank v. Caldwell, 13 Fed. Rep. 432; Hepburn v. School-dist. 23 Wall. 480.

11 People v. Com'rs, 69 N. Y. 91; S. C. 8 Hun, 536.

12 St. Louis Nat. Bank v. Papin, 4 Dill. 29.

13 City Nat. Bank v. Paducah, 2 Flippin, 61.

14 Richmond City v. Scott, 48 Ind. 568.

both of property and debts secured by it.[1] The fact that two banks by their charters are specially taxed, will not preclude taxation of the shares in the national banks by general law; neither are the shares to be excluded from taxation because some other classes of moneyed capital are exempted from taxation by a law of limited application.[2] A tax may be levied by an incorporated city on the shares of stock of a national bank at the same rate as on real and personal property within the city, although there is still in existence branches of the state bank, the shares of which are not subject to municipal taxation.[3] Where there is no discrimination against such shares and in favor of other moneyed capital in the hands of individual citizens of the state, such taxation is valid.[4] The act of congress of June 3, 1864, was not intended to curtail the power of the state on the subject of taxation, or to prohibit exemptions of particular kinds of property, but to protect corporations formed under its authority from unfriendly discrimination by the state in the exercise of their taxing powers.[5] It was the intention of congress to prevent the state, by hostile legislation, from discriminating against national banks, and to place all bank shares, state and national, on a common level.[6] The system of assessment of bank shares, owing to the fact that the shares of different banks are differently rated, must necessarily be imperfect.[7] The law does not require absolute accuracy where the shareholders have the same rights as other individuals taxed for moneyed capital; they should look to the statutes of the state for relief.[8] It is not sufficient, to invalidate the taxation, to show that in the case of a single state bank, the shares of which are subject to a like taxation, that the assessors, either by mistake or intention, have shown favor.[9]

ENFORCEMENT OF PAYMENT. Payment of the tax imposed on bank shares may be enforced.[10] The tax imposed pursuant to statute becomes a lien upon the shares taxed, and such lien continues till the tax is paid.[11] It may be made the duty of every national bank to pay for its stockholders the tax legally assessed against their respective shares, whether the stockholders reside in the state or not.[12] The state statute relating to the collection of taxes upon bank shares does not apply to shares belonging to the estates of deceased persons.[13] A bank may be compelled to disclose the amount of deposits due each depositor, and a state law to that effect is enforceable.[14] Where the statute requires or permits the bank to pay the tax for the shareholder, as trustee it is the proper complainant seeking relief against illegal exaction.[15] A statute requiring the cashier to return to the clerk of each town in the state where shareholders reside, a list of shareholders resident therein, and the amount paid out on each share, is valid.[16]

SUIT TO ENJOIN COLLECTION. A shareholder who has made affidavit and demand for deduction of debts owed by him from the valuation of his shares, as required by law, may bring suit to enjoin the collection of such tax.[17] And

1 Pollard v. State, 65 Ala. 633; Hepburn v. School Directors, 23 Wall 480.

2 Lemley v. Com'rs. 85 N. C. 382; Lionberger v. Rouse, 9 Wall. 468; Tappan v. Merch. Nat. Bank, 19 Wall. 490; Providence Ins. Co. v. Boston, 101 Mass. 595.

3 Richmond City v. Scott, 48 Ind. 568.

4 Lemley v. Com'rs. 85 N. C. 379.

5 Adams v. Nashville, 95 U. S. 19; People v. Com'rs, 4 Wall. 214; Hepburn v. School Directors, 23 Wall. 480.

6 Stanley v. Board of Sup'rs, 15 Fed. Rep. 483.

7 Id.

8 Id.

9 Id.

10 First Nat. Bank v. Douglas Co. 3 Dill. 299.

11 Simmons v. Aldrich. 41 Wis. 241; Van Slyke v. State, 23 Wis. 655; Bagnall v. State, 25 Wis. 112.

12 Nat. Commercial Bank v. Mobile, 62 Ala. 295; Nat. Bank v. Com'rs, 9 Wall 353; Tappan v. Merch. Nat. Bank, 19 Wall. 491; Waite v. Dowley, 94 U. S. 527; Adams v. Nashville, 95 U. S. 19; McIvers v. Robinson, 53 Ala. 456.

13 Revere v. Boston, 123 Mass. 375.

14 First Nat. Bank v. Hughes, 21 Alb Law J. 74.

15 Nat. Bank v. Cummings. 101 U. S. 153; First Nat. Bank v. St. Joseph, 46 Mich. 526.

16 Waite v. Dowley, 94 U. S. 527.

17 Hills v. Nat. Alb. Exch. Bank, 12 Fed. Rep. 93.

where it is shown that the affidavit and demand would have been unavailing, they may show, in an action by the bank brought on their behalf, the deductions to which they were entitled.[1] A national bank may, on behalf of its stockholders, maintain a suit to enjoin the collection of a tax which has been unlawfully assessed on the shares by state authorities,[2] and on the ground of an illegal assessment arising from the failure to deduct from the valuation the debts owned by the stockholders,[3] although payable in the first instance by such shareholder, if a multiplicity of suits can be thereby avoided, or injury to its credit or business is anticipated.[4] Where the statute requires or permits the bank to pay the tax for the shareholder, as trustee, the bank is the proper complainant seeking relief against illegal exaction.[5] A bill to restrain the collection of the state tax must show a statute discriminating against them, or that they are rated higher in proportion to actual valuation than other moneyed corporations.[6]—[ED.

[1] Hills v. Nat. Alb. Exch. Bank, 105 U. S. 319; S. C. 12 Fed. Rep. 93; Evansville Nat. Bank v. Britton, 105 U. S. 322. See Sup'rs of Albany v. Stanley, 12 Fed. Rep. 82.

[2] Hills v. Nat. Alb. Exch. Bank, 105 U. S. 319; S. C. 12 Fed. Rep. 93; Evansville Nat. Bank v. Britton, 105 U. S. 322.

[3] Nat. Alb. Exch. Bank v. Hills, 5 Fed. Rep. 249; Hills v. Nat. Alb. Exch. Bank, 105 U. S. 319; S. C. 12 Fed. Rep. 93; Cummings v. Nat. Bank, 101 U. S. 153; Pelton v. Nat. Bank, 101 U. S. 143; Evansville Nat. Bank v. Britton, 105 U. S. 322.

[4] City Nat. Bank v. Paducah, 2 Flippin, 61. See Nat. Alb. Exch. Bank v. Hills, 5 Fed. Rep. 248; reversed, 12 Fed. Rep. 93.

[5] Nat. Bank v. Cummings, 101 U. S. 153, affirmed; Evansville Nat. Bank v. Britton, 105 U. S. 322; S. C. 12 Fed. Rep. 93; First Nat. Bank v. St. Joseph, 46 Mich. 526.

[6] German Nat. Bank v. Kimball, 103 U. S. 732; Hills v. Nat. Alb. Exch. Bank, 12 Fed. Rep. 93.